**STATE of Maine**

v.

**Edwin J. SHEPARD.**

Supreme Judicial Court of Maine.

Aug. 5, 1974.

Burt Kettle, Asst. Atty. Gen., Kenneth Kimmel, Asst. Atty. Gen., Augusta, for plaintiff.

Grover G. Alexander, Gray, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

ARCHIBALD, Justice.

Appellant was convicted of operating a motor vehicle while under the influence of intoxicating liquor. 29 M.R.S.A. § 1312(10)(A). During the trial the result of a test taken to determine appellant's blood-alcohol level was admitted in evidence. The appeal is limited to a determination of whether the admission of this evidence was error. We find none and deny the appeal.

A state police officer, having observed irregularities in the operation of the car being driven by appellant, after pursuing the vehicle for approximately one and one-half miles, succeeded in stopping it. He made observations of appellant, concluded that he was under the influence of intoxicating liquor and placed him under arrest. The lawfulness of the arrest under the above circumstances is unquestioned.

Immediately on placing the appellant under arrest the officer advised him of the consequences of refusing to submit to a blood test pursuant to the provisions of the

so-called "Implied Consent Law." [1] Appellant then "indicated that he wished to take a blood test," which was done.

The issue before us is generated by the following question and answer taken from the cross-examination of the police officer:

"Q. After you told him that if he didn't take the test the Secretary of State would suspend his license for three months, did you then tell him that if he did take the test, you would use it against him in court?

A. No, sir, I read exactly what was on the sheet."

██ Appellant's argument asserts that a condition precedent to admissibility of the test results is some affirmative act or statement of the operator assenting or agreeing to submit to it *at the time* the law enforcement officer directs such a test to be taken. This argument, however, ignores the plain and unambiguous statutory language, namely:

"Any person who operates . . . a motor vehicle within this State *shall be deemed to have given consent* to a chemical test . . . ." (Emphasis supplied.)

29 M.R.S.A. § 1312. Since the emphasized statutory language is not designed to convey a technical or peculiar meaning, it must be "construed according to the common meaning of the language." 1 M.R.S. A. § 72(3); *see* Shapiro Bros. Shoe Co., Inc. v. Lewiston-Auburn S.P.A., 320 A.2d 247 (Me.1974). We have emphasized the particular statutory language because it is expressed in the past tense. It is clear to us that the Legislature deemed the antecedent act of operating a motor vehicle, per se, to be all that is required to give consent for the taking of the blood test upon a subsequent lawful arrest for this statutory violation. The heading, "Implied consent to chemical tests," demonstrates such legislative intent. It seems to us self-evident that no additional consensual affirmative decision is required when a motor vehicle operator lawfully arrested for violation of 29 M.R.S.A. § 1312(10)(A) is directed to submit to such a test.

---

1. "§ 1312. Implied consent to chemical tests; operation under the influence of intoxicating liquor; penalties

Any person who operates or attempts to operate a motor vehicle within this State shall be deemed to have given consent to a chemical test to determine his blood-alcohol level by analysis of his blood or breath, if arrested for operating or attempting to operate a motor vehicle while under the influence of intoxicating liquor.

He shall be informed by a law enforcement officer of the tests available to him, and said accused shall select and designate one of the tests. At his request he may have a test of his blood administered by a physician of his choice, if reasonably available.

1. Prerequisites to tests. Before any test specified is given, the law enforcement officer shall inform the arrested person of the consequences of his refusal to permit a test at the direction of the law enforcement officer. If the law enforcement officer fails to comply with this prerequisite, any test results shall be inadmissible as evidence in any proceeding before any administrative officer or court of this State.

2. Hearing. If a person under arrest refuses upon the request of a law enforcement officer to submit to a chemical test to determine his blood-alcohol level by analysis of his blood or breath, none shall be given. The Secretary of State, upon the receipt of a written statement under oath of the arrest of a person for operating or attempting to operate a motor vehicle while under the influence of intoxicating liquor, and that such person had refused to submit to a chemical test to determine his blood-alcohol level by analysis of his blood or breath, shall immediately notify the person, in writing, as provided in section 2241 that his license or permit and his privilege to operate have been suspended. Such suspension shall be for a period of 3 months for a first refusal under this or any prior implied consent provision under Maine law. If such refusal is a 2nd or subsquent refusal under this or any prior implied consent provision under Maine law, such suspension shall be for a period of 6 months.

. . . . .

8. Evidence. The percentage by weight of alcohol in the defendant's blood at the time alleged, as shown by the chemical analysis of his blood or breath shall be admissible in evidence." 29 M.R.S.A. §§ 1312, (1), (2), (8).

Because of the express provision of 29 M.R.S.A. § 1312(1), the admissibility of the test result is contingent on the arresting officer's informing the operator of the consequences of *refusing* to submit to the test. These consequences are delineated in Section 1312(2) and involve the suspension by the Secretary of State of the operator's privilege to operate motor vehicles. Neither this section, nor Section 1312(8), requires the officer to inform the operator that the test results are admissible in evidence. The civil penalty for *refusing* to submit to the chemical test must not be confused with the statutory provision for admitting the test in evidence. In short, the Legislature deemed it wise to give such an operator the right to refuse to submit to the demanded test (subject to penalty) and, additionally, to adopt an exclusionary rule inhibiting the State's use of such a test if the right to refuse to take it was not adequately explained.

When the original "Implied Consent Law" was under legislative debate the Justices of the Supreme Judicial Court were asked[2] specifically whether the proposed legislation was violative of either the Fifth or Fourteenth Amendments of the United States Constitution or the parallel provisions of the Constitution of Maine, Art. I, §§ 6 and 6-A. The Justices responded in the negative. Opinion of the Justices, 255 A.2d 643 (Me.1969). We adopt these unanimous opinions and the reasons assigned therefor. *See* Martin v. Maine Savings Bank, 154 Me. 259, 147 A.2d 131 (1958).

We now hold that no constitutional infirmity arises from *implying* consent to a chemical test to determine the blood-alcohol level of a motor vehicle operator, lawfully arrested for violating Section 1312(10)(A), from the mere act of operating such a vehicle. This act is an effective waiver of the operator's right, if such he has, under either of the above provisions of the United States or Maine Constitutions.

The entry is:

Appeal denied.

All Justices concurring.

2. Art. VI, § 3, Constitution of Maine.