STATE of Maine

v.

**Harold D. STADE.**

Supreme Judicial Court of Maine.

Submitted on Briefs March 20, 1996.

Decided Aug. 16, 1996.

R. Christopher Almy, District Attorney, Jeffrey M. Silverstein, Assistant District Attorney, Dover–Foxcroft, for the State.

Kevin L. Stitham, C:W. & H.M. Hayes, Dover–Foxcroft, for the Defendant.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

Pursuant to 15 M.R.S.A. § 2115–A(1) (1980),[1] the State appeals from an order entered in the District Court (Dover–Foxcroft, *Field, J.*) granting defendant Harold Stade's motion to suppress the results of a blood-alcohol test in the State's prosecution of Stade for operating an automobile while under the influence of alcohol. 29–A M.R.S.A. § 2411(1) (1996) (Class D). The State contends that the court erred when, after initially denying Stade's motion to suppress, it reversed itself and granted the motion. We disagree and affirm the order.

On April 1, 1995, Stade was arrested in Greenville by Officer William Chandler for operating his automobile while under the influence of alcohol.[2] Stade told Chandler, who is a friend of Stade's, that he could not afford to lose his driver's license because he depended on it for employment purposes. Chandler assured Stade that he should not worry about this because he could obtain a driver's license for work purposes from the Secretary of State. Stade submitted to a blood-alcohol test that revealed a blood-alcohol content of .15%. Chandler did not read Stade the implied consent information prior to administering the test. 29–A M.R.S.A. § 2521(3) (1996).

Following the entry of his plea of not guilty, Stade filed a request for a jury trial and a motion to suppress the evidence de-rived from the blood-alcohol test. The court denied the motion on June 5, 1995, the day of the hearing. On June 7, the court requested that the case file be sent to it for further review. On August 7, without further hearing, the court reversed itself and granted Stade's motion to suppress. It is from that order that the State appeals.[3]

We will not disturb the District Court's decision unless we find errors of law or clearly erroneous findings of fact. *State v. Arnheiter,* 598 A.2d 1183, 1185 (Me.1991). A ruling on a motion to suppress evidence based on uncontroverted facts involves a legal conclusion that we review independently on appeal. *State v. Dube,* 655 A.2d 338, 340 (Me.1995); *State v. Cloutier,* 544 A.2d 1277, 1280 (Me.1988).

The State contends that the District Court lacked jurisdiction to reconsider its original order denying Stade's motion to suppress because the court already had made a ruling on the motion to suppress and Stade had requested a jury trial. We are unpersuaded by this contention.

M.R.Crim.P. 22(c) provides in part:

**Time of Transfer.** When the case is in order for transfer to the Superior Court, the Clerk shall transmit to the Superior Court the District Court's entire original file in the case and any bail that has been taken. A case is in order for transfer when the time period for making pretrial motions has expired *and judicial action has been completed on all pretrial matters* . . . .

(Emphasis added.)

The District Court had continuing jurisdiction over the case until the case was transferred to the Superior Court. *State v. Hayford,* 412 A.2d 987, 990 (Me.1980). The original order was not a final judgment and the court was within its discretion to reconsider it. *Id.* Because the file was in the hands of the District Court, and because not

---

1. 15 M.R.S.A. § 2115–A(1) (1980) provides that prior to a trial appeals may be taken by the State from the District Court on questions of law in criminal cases. Such appeals are taken directly to this Court.

2. Stade concedes that probable cause for his arrest existed at the time of the incident.

3. The State obtained the necessary approval of the Attorney Generally prior to filing this appeal. 15 M.R.S.A. § 2115–A(5) (Supp.1995).

all pretrial motions had been finally resolved, the case was not ready for transfer to the Superior Court. Accordingly, Rule 22(c) did not mandate that the clerk transmit the file to the Superior Court.

■ The State also contends that the court erred in granting the motion to suppress the evidence of Stade's blood-alcohol test results because the officer's actions did not deprive Stade of any statutory or constitutional right. The State is correct that the statute governing the administration of blood-alcohol tests does not in and of itself require exclusion of the test results. 29–A M.R.S.A. § 2521(3) requires that before a blood-alcohol test is administered to a person suspected of operating under the influence, the law enforcement officer must inform the person of the consequences of the failure to submit to and complete a test. Section 2521(4), however, provides that the failure of an officer to comply with the notice requirements does not necessarily preclude the admissibility of the test results, provided those results are reliable. *See State v. Baker,* 502 A.2d 489, 494–95 (Me.1985). Not complying with the implied consent statute, however, was not the only failure of the police officer in this case. The officer, a friend of Stade's, made affirmative representations to Stade about Stade's ability to drive to and from work that had an impact on Stade's decision to submit to the blood-alcohol test. In granting the motion to suppress, the court relied on the fundamental fairness and due process factors set forth in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

■ "The Due Process Clause of the Constitution prohibits deprivations of life, liberty, or property without 'fundamental fairness' through governmental conduct that offends the community's sense of justice, decency and fair play." *Roberts v. Maine,* 48 F.3d 1287, 1291 (1st Cir.1995) (quoting *Moran v. Burbine,* 475 U.S. 412, 432–34, 106 S.Ct. 1135, 1146–48, 89 L.Ed.2d 410 (1986)). In determining whether state action violates the due process clause, a court considers: (1)

the private interest that will be affected by the government's action; (2) the risk of an erroneous deprivation of such an interest through the existing procedure and the probable utility of additional or substitute procedural safeguards; and (3) the government's interest in adhering to the existing procedure, including the fiscal and administrative burdens that additional procedures might entail. *Mathews,* 424 U.S. at 335, 96 S.Ct. at 903.

■ The above factors weigh heavily in Stade's favor. Stade's loss of his driver's license is a property interest[4] worthy of due process protection. *State v. Savard,* 659 A.2d 1265, 1267 (Me.1995), and as the court determined, the officer's providing Stade with false information, coupled with the officer's failure to read the implied consent form, was fundamentally unfair to Stade. Moreover, there is a strong due process justification for requiring law enforcement officials to inform drivers of implied consent information and to refrain from giving drivers assurances that minimize the seriousness of a subsequent loss of license privileges. Maine's implied consent procedures may, in certain cases such as this, present a substantial risk of an erroneous deprivation of a protected due process interest. *Roberts,* 48 F.3d at 1294 (allowing defendant to call attorney likely to alleviate risk of deprivation of liberty interest). Finally, although the State's interest in preventing drunk drivers from operating on our highways is great, the State has no legitimate interest in allowing its law enforcement officers both to ignore the statutory requirements of the implied consent law and to affirmatively mislead citizens about the consequences of taking or failing to take a blood-alcohol test. We agree with the court's conclusion that the admission of the blood-alcohol test in the circumstances of this case would be fundamentally unfair and, accordingly, we affirm the order of the District Court.

The entry is:

Order affirmed.

---

**4.** Although characterized by the trial court in its suppression order as a liberty interest, State's driver's license is more properly viewed as a

property interest. *See, eg., Mackey v. Montrym,* 443 U.S. 1, 10 & n. 7, 99 S.Ct. 2612, 2617 & n. 7, 61 L.Ed.2d 321 (1979).

LIPEZ, Justice, with whom DANA, Justice joins, dissenting.

I respectfully dissent because Officer Chandler's conduct did not violate the canons of fundamental fairness protected by the Due Process Clause of the Fourteenth Amendment. In affirming the trial court's decision, the Court relies on the coincidence of two events to conclude that Stade was denied due process by the officer's conduct in obtaining a breath sample from Stade: first, the officer's failure to read to Stade the implied consent form that advised him of the consequences of a failure to submit to a breath test; second, the officer's provision of erroneous legal advice concerning Stade's ability to obtain a driver's license for work purposes if he was eventually convicted of operating under the influence. These two events did not make Stade's submission to the breath test fundamentally unfair.

*Implied Consent*

In finding that the officer's conduct was fundamentally unfair, the trial court stated in pertinent part:

... Officer Chandler did more than just fail to read the implied consent form to Stade. The officer gave false information to Stade *enhancing the involuntary nature of the test.*

(Emphasis added.) Implicit in this analysis is the suggestion that Officer Chandler's failure to inform Stade of the consequences of refusing to take a breath test made Stade's submission to the test involuntary to some degree. This assumption is contrary to logic and well-established precepts of constitutional law. The officer does not advise the motorist of a "right" to refuse to take a breath test.[5] Rather, the officer advises the motorist of a duty to take the test and the consequences of a failure to comply with that duty.

As early as 1953, in *State v. Demerritt,* 149 Me. 380, 386, 103 A.2d 106, 110 (1953) we stated that

[t]he ... "blood test statute" gives a respondent no "privilege." Any person can have a blood test at any time, and the result can be testified to in court under the common law as scientific fact.... The statute itself recognizes this and gives no privilege.

*See also State v. Van Reenan,* 355 A.2d 392, 395 (Me.1976) (stating that "defendant had no right to refuse to submit" ... to blood-alcohol test). A motorist's ability to withdraw his or her consent to the administration of a breath test is not a right of "constitutional proportion," but "simply a matter of grace bestowed by the ... legislature." *South Dakota v. Neville,* 459 U.S. 553, 565, 103 S.Ct. 916, 923, 74 L.Ed.2d 748 (1983).

By accepting a license to operate a motor vehicle in this State, the motorist gives his or her implied consent to submit to and complete a test to determine a blood-alcohol content. 29–A M.R.S.A. § 2521 (1996). "[I]t is clear ... that the Legislature deemed the antecedent act of operating a motor vehicle, per se, to be all that is required to give consent for the taking of the blood test...." *State v. Shepard,* 323 A.2d 587, 588 (Me. 1974). Therefore, no further consensual affirmative decision is required when a motor vehicle operator is lawfully arrested and directed to submit to a blood-alcohol test. *State v. Adams,* 457 A.2d 416, 421 (Me.1983).

Because Stade's lack of awareness of his ability to withdraw his consent to submit to a blood-alcohol test is of no consequence to the constitutionality of the search, the question then becomes whether the additional inaccurate, off-the-cuff legal advice given by the officer is sufficient to deprive Stade of "that fundamental fairness essential to the very

---

**5.** Title 29–A M.R.S.A. § 2521(3) (1996) details what an officer must tell an OUI suspect before administering a breath test to the suspect. Section 2521(3) states in pertinent part:

**Prerequisites to tests.** Before a test is given, the law enforcement officer shall inform the person that failure to submit to and complete a test will:

A. Result in suspension of that person's driver's license for a period up to 6 years;

B. Be admissible in evidence at a trial for operating under the influence of intoxicants; and

C. Be considered an aggravating factor at sentencing if the person is convicted of operating under the influence of intoxicants that, in addition to other penalties, will subject the person to a mandatory minimum period of incarceration.

concept of justice." *Lisenba v. California*, 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166 (1941).

### *Officer Chandler's Legal Advice*

After Stade expressed concerns about losing his license,[6] Officer Chandler told Stade that he could obtain a license for work purposes. Following the lead of the First Circuit Court of Appeals in *Roberts v. Maine*, 48 F.3d 1287 (1st Cir.1995), the trial court applied both the procedural due process test of *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), and a substantive due process, fundamental fairness test to reach the conclusion that Officer Chandler's errant advice made Stade's submission to the breath test fundamentally unfair. This reliance on *Roberts* is misguided factually and legally.

In *Roberts*, the defendant appealed from the imposition of an unwarned mandatory minimum period of incarceration imposed because of his refusal to submit to a blood-alcohol test. *Roberts*, 48 F.3d at 1289. Although the police officer read Roberts the "implied consent" form, the standard warning in the form failed to inform Roberts that refusing the test would inevitably result in his incarceration. *Id.* Furthermore, during the implied consent process, the officer refused to permit Roberts to contact his attorney, despite Roberts' repeated requests to do so. *Id.* After receiving the incomplete warning, and without the help of an attorney,

Roberts refused to take the blood-alcohol test and ultimately was sentenced to the minimum two-day period of incarceration for this refusal. *Id.*

Recognizing the "unique situation" presented by the *Roberts* case, the First Circuit emphasized that the incomplete "implied consent" warning, by failing to inform Roberts of a "mandatory," "irrevocable and irrebuttable" sentencing consequence, created a significant likelihood of an erroneous deprivation of his liberty. *Id.* at 1291–92, 1295. Moreover, Roberts was denied the opportunity to seek the advice of legal counsel who might have been able to "correct misleading information provided by the state" before Roberts was required to make an irrevocable decision that was crucial to his subsequent sentencing. *Id.* at 1293–94. The First Circuit concluded that it was fundamentally unfair to impose a mandatory minimum sentence on a person for his refusal to submit to a blood-alcohol test when that person was required to make that refusal decision, with its attendant irrevocable consequences for his liberty, on the basis of inaccurate information and without the aid of requested legal counsel. *Id.* at 1295–96.

None of the factors that the First Circuit found so compelling in *Roberts* are present in this case. The information on the work-restricted license, unlike the deficient warning in *Roberts*, did not induce Stade to make an irrevocable decision affecting his liberty interests.[7] Stade did not request, and there-

---

6. The record in this case is not clear about what type of license Stade possessed. At the hearing, Stade's wife testified that Stade informed Officer Chandler that he could not afford to lose his license because he had to "drive fifty miles to work each way." At the close of the hearing the trial court found as a matter of fact that Stade "expressed ... a grave concern about the loss of his license....." In its written decision the court for the first time characterizes Stade's license as a "commercial license." Although in some instances a commercial operator may face a longer license suspension for his failure to submit to a breath test than an operator who possesses a standard license, *compare* 29-A M.R.S.A. § 2521(6) (1996) *with* 29-A M.R.S.A. § 2523(2) (1996), these differing penalties do not affect the analysts of the constitutionality of Officer Chandler's conduct.

7. The trial court describes a deprivation of "liberty" suffered by Stade:

> The liberty interest deprived by the state's action in this case is the giving of false information *leading to Stade losing his commercial license* when he was under the assumption no such thing would happen.

(Emphasis added.) A person's interest in their driver's license, however, is more typically characterized, as it is by the Court, as a property interest. *See Mackey v. Montrym*, 443 U.S. 1, 10, 99 S.Ct. 2612, 2616–17, 61 L.Ed.2d 321 (1979); *Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971). The characterization does not alter the analysis. Whether one's qualified right to possess a driver's license implicates a "liberty" or "property" interest, "[i]t is clear that the Due Process Clause applies to the deprivation of a driver's license by the State...." *Dixon v. Love*, 431 U.S. 105, 112, 97 S.Ct. 1723, 1727, 52 L.Ed.2d 172 (1977); *State v. Savard*, 659 A.2d 1265, 1267 (Me.1995) (driver's license

fore was not refused, the opportunity to consult an attorney to assist him in making his decision. Finally, unlike the information provided to Roberts as a result of the deficient standard warning form, Officer Chandler's errant legal advice was not a part of any prescribed arrest and testing procedure.

The trial court characterized Officer Chandler's advice about the possibility of obtaining a work-restricted license from the Secretary of State as "false." The Court characterizes it as "an affirmative misrepresentation." Officer Chandler's advice does not deserve these harsh characterizations. Title 29–A M.R.S.A. § 2501 (1996) states in pertinent part:

> **1. Eligibility.** Unless otherwise provided, the Secretary of State may issue a restricted license to a first-time OUI offender if
>
> A. Two thirds of the suspension period has expired; and
>
> B. The Secretary of State has received notice that the person has completed the alcohol and drug program.
>
> **2. Restrictions.** A restricted license issued pursuant to subsection 1 is subject to the following conditions and restrictions;
>
> A. Use is limited to travelling to a treatment program or to employment for a minimum of 90 days after the original suspension date; and
>
> B. Any other conditions or restrictions the Secretary of State considers advisable for the safety of the public and the welfare of the operator.

The officer gave Stade inaccurate information only in the sense that he apparently suggested that Stade would immediately be eligible for a work-restricted license. Instead, a first-time OUI offender may obtain a work-restricted license only after two-thirds of the suspension period has expired and the

applicant completes certain other administrative requirements.[8]

Despite this inaccuracy, the officer was certainly right that Stade was better off submitting to the test than refusing to submit. First, a refusal guaranteed Stade a six-month loss of license. 29–A M.R.S.A. § 2521(6) (1996). Second, Stade was no less subject to prosecution for the OUI charge without the results of the blood-alcohol test than he was with the results. In fact, Stade had a greater opportunity to retain his driving privileges by taking the test and then challenging the tests results at trial than he did by refusing to take the test. Third, Stade faced a shorter period of suspension of his license if he was convicted of OUI based on the blood-alcohol test results than if he were convicted of OUI and had refused to submit to a blood-alcohol test. The typical suspension for a first-time OUI conviction is 90 days. 29–A M.R.S.A. § 2451(3) (1996). Hence, if convicted of OUI on the basis of the results of the blood-alcohol test, Stade would be eligible for a work-restricted license 60 days after his conviction. 29–A M.R.S.A. § 2501(1) (1996). If Stade was convicted of OUI and had refused to submit to a blood-alcohol test, he faced a mandatory period of suspension of 270 days with no possibility of obtaining a work-restricted license during the first 180 days. 29–A M.R.S.A. §§ 2451(3) & (4); 2501(3); 2521(5) & (6) (1996).

The Supreme Court has relied on the Due Process Clause's guarantee of fundamental fairness to exclude evidence and overturn convictions when the challenged governmental conduct is so contrary to the law of the land that it "offend[s] those canons of decency and fairness which express the notions of justice of English-speaking peoples...." *Malinski v. New York*, 324 U.S. 401, 416–17, 65 S.Ct. 781, 89 L.Ed. 1029 (1945). Although I agree that law enforcement officers should read the implied consent form to a

---

is a special privilege that carries with it certain due process rights).

**8.** The record does not reveal whether Stade has any prior OUI convictions, although the nature of Officer Chandler's advice about the work-restricted license suggests that he had none. Even if this is not the case, and Stade was not eligible for such a license, the misleading information

about the possibility of such a license does not result in a constitutional violation. If Stade had refused to take the test, he was guaranteed a license suspension of at least six months. 29 M.R.S.A. § 2521(6) (1996). He still stood a better chance of preserving his license by taking the test and challenging the OUI charge at trial.

suspect and refrain from providing legal advice, and that in some circumstances the provision of such advice may violate a defendant's constitutional rights, I also conclude that the conduct of Officer Chandler in these circumstances falls far short of the type of misconduct that so chocks the sensibilities of civilized society as to necessitate exclusion of the evidence. Officer Chandler did nothing that constitutes the type of oppressive and deceptive conduct proscribed by the Due Process Clause of the Fourteenth Amendment. To hold that such conduct deprives Stade of his rights "within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law." *Daniels v. Williams*, 474 U.S. 327, 332, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986).

I would vacate the trial court's suppression order.

WATHEN, C.J., and GLASSMAN, J., concur.