2001 ME 141

**STATE of Maine**

v.

**Debra BAVOUSET**

**Docket No. KEN–00–465.**

Supreme Judicial Court of Maine.

Argued: Sept. 11, 2001.
Decided: Oct. 17, 2001.

*v. Boone's Transp., Ltd.,* 1998 ME 105, ¶ 5,     710 A.2d 256, 257.

David W. Crook, Dist. Atty., Brad Grant, Asst. Dist. Atty., Laura Yustak Smith, Asst. Atty. Gen., (orally), Joseph Wannamacher, Asst. Atty. Gen., Donald Macomber, Asst. Atty. Gen., Augusta, for State.

James E. Mitchell, Esq., Jim Mitchell and Jed David, P.A., Augusta, for defendant.

Panel: WATHEN, C.J.,* and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

SAUFLEY, J.

[¶ 1] Debra Bavouset appeals from the judgment of conviction entered in the Superior Court (Kennebec County, *Gorman, J.*) upon a jury verdict finding her guilty of operating under the influence of alcohol and finding that she refused to submit to a blood-alcohol test. Bavouset challenges the conviction on multiple grounds. The only ground worthy of discussion, however, is the argument that the court erred when it denied Bavouset's motion to suppress all evidence of her refusal to take a breath test because she was given inaccurate information regarding the consequences of a refusal by the arresting officer. We affirm the judgment.

## I. BACKGROUND

[¶ 2] Bavouset was arrested by Officer Daniel Goss of the Waterville Police Department for operating under the influence of alcohol. At the Waterville police station, Goss asked Bavouset numerous times to submit to a blood-alcohol test by means of an intoxilizer machine. Bavouset responded to each request with her own request to have her attorney present. Goss declined her request for counsel and repeatedly warned her of the consequences of refusing the test, including a mandatory minimum jail sentence, in accordance with 29–A M.R.S.A. § 2521(3) (Supp.2000). Although Goss correctly informed Bavouset of the consequences of a refusal, Bavouset continued to respond in a manner that avoided making a decision. After some time, in addition to reminding Bavouset

* Wathen, C.J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

that her behavior would be considered a refusal and would carry significant negative consequences, Goss incorrectly informed Bavouset that he "believe[d]" the mandatory period of incarceration for refusing was forty-eight hours, when in fact it is ninety-six hours.[1] *See* 29–A M.R.S.A. § 2411(5)(A)(3)(b) (Supp.2000). Goss eventually determined that Bavouset refused the test. All of these events were recorded on videotape.

[¶ 3] Bavouset pleaded not guilty to the charge of operating under the influence, Class D, *see* 29–A M.R.S.A. § 2411(1) (1996), and moved to suppress evidence of her refusal. After reviewing the videotape, the court (*Marden, J.*) denied the motion. Bavouset was later convicted upon a jury verdict finding her guilty of operating under the influence and finding that she refused to submit to the blood-alcohol test. Her sentence included the mandatory ninety-six hour incarceration for refusing to submit to the blood-alcohol test. This appeal followed.

## II. DISCUSSION

[¶ 4] The Sixth Amendment right to counsel does not attach until the defendant has reached a "critical stage" in the proceedings. *United States v. Wade,* 388 U.S. 218, 227–28, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The administration of a blood-alcohol test is not a critical stage. *State v. Allen,* 485 A.2d 953, 956 (Me.1984). Accordingly, Bavouset does not argue that she was entitled to counsel simply because she had been arrested and asked to take the test. Rather, she argues that the officer's error in estimating the length of incarceration, combined with his refusal to allow her to speak with counsel before deciding whether to take the test, resulted

in a fundamentally unfair process. Bavouset therefore contends that the court erred in denying her motion to suppress the evidence that she refused to take the test. Citing *Roberts v. Maine,* 48 F.3d 1287 (1st Cir.1995), she urges us to conclude that Goss's erroneous information regarding the period of mandatory incarceration misled her at a time when she had to make the crucial decision of whether to submit to the test, and that Goss's denial of her request for counsel under these circumstances therefore violated her due process rights.

[¶ 5] The facts of *Roberts,* however, are distinguishable from those presented here. Roberts was led to believe that no mandatory incarceration would result from refusing the test when in fact a forty-eight hour mandatory period was required at that time. *Roberts,* 48 F.3d at 1289. He was therefore misled regarding the *fact* of incarceration rather than its *duration,* whereas Bavouset was incorrectly informed only in unsure language about the duration of incarceration after having been correctly informed many times of the consequence of a refusal.

[¶ 6] This case is also distinguishable from *State v. Stade,* 683 A.2d 164 (Me. 1996), in which a police officer failed to warn an OUI arrestee of the consequences of refusing the test, and then erroneously assured the arrestee that he could obtain a work permit after losing his driver's license upon conviction. *Stade,* 683 A.2d at 165. In contrast, Bavouset was correctly informed about the consequences of refusing the test and was not assured of anything given that Goss gave the incorrect information only after some time and with uncertain language. Moreover, in *State v.*

---

1. Bavouset also alleges that she was misled by two other statements made by Goss. Neither

contention merits discussion.

*Cote,* 1999 ME 123, 736 A.2d 262, we held that an OUI arrestee has no constitutional right to be informed of every possible consequence of refusing to submit to a blood-alcohol test as long as he or she is warned that significant negative consequences will result. *Cote,* 1999 ME 123, ¶¶ 10, 17, 736 A.2d at 265–66.

[¶ 7] There exists no bright line past which an officer's misstatement must result in the suppression of evidence of a refusal. Rather, when a defendant asserts that the circumstances surrounding a refusal to take a blood-alcohol test have violated her right to due process, we review the procedures used by the police to determine if the conduct "offends the community's sense of justice, decency, and fair play." *Id.* at ¶ 11, 736 A.2d at 265 (quoting *Roberts,* 48 F.3d at 1291).

[¶ 8] In this case, we conclude that Bavouset was sufficiently informed that significant negative consequences would result from her refusal and that the officer's misstatement does not offend the community's sense of justice, decency, or fair play. Neither Goss's uncertain misstatement, made after a significant period of time during which Bavouset—having been correctly informed of the consequences of a refusal—failed to indicate whether she would take the test, nor his denial of Bavouset's request for counsel, acted to deprive Bavouset of fundamental fairness.

The entry is:

Judgment affirmed.