STATE OF MAINE  
CUMBERLAND, ss

STATE OF MAINE

v.

MYRA BROOKER,

Defendant

SUPERIOR COURT  
CIVIL ACTION  
Docket No. CR-15-7305

STATE OF MAINE  
Cumberland, SS. Clerk's Office  
JUL. 05 2016  
RECEIVED

ORDER

Before the court is defendant's amended motion to suppress. Defendant argues her due process rights were violated and evidence of her statements and refusal to take a test must be suppressed. For the following reasons, the motion is denied.

FINDINGS

The video shows the following. At the police station, the officer read the implied consent form to defendant. She understood paragraphs one and two. She did not understand paragraph three. The officer stated a refusal would be considered an aggravating factor at sentencing. The officer read paragraph three a second time. He said defendant would not be forced to take a test. Defendant wanted to be clear about the implications of refusing to submit to a test. The officer stated she would still be charged with OUI and that if she took the intoxilyzer test, a blood alcohol content would be printed. If she did not take the test, she would still be taken to the county jail.

The officer told her about the minimum mandatory sentence for a .15 test or higher and a license suspension of up to six years for a refusal. She stated again she did not understand paragraph three. The officer told her the penalties for a refusal would be stricter and higher than a normal OUI. The officer then informed defendant incorrectly that if she was found guilty of OUI and her test was .08 to .15, her license suspension would be for 90 days, as opposed to the required 150 days.

1

The officer read paragraph four, which defendant understood. She stated paragraph three was not super clear and she did not think she would take the test because the implications were not clear. The officer next stated he could not answer specific questions about fines. The defendant signed the refusal form. She stated again she did not understand paragraph three and alleged that the officer did not want to answer her questions. The officer then stated that he did not know what the implications are but the penalties would be stiffer if defendant refused a test.

Defendant asked if she would lose her license immediately. The officer stated she would receive a letter in the mail within a couple of weeks with the effective date for the suspension. He told her she had the right to an administrative hearing. He asked again if she wanted to refuse the test. She stated the information was not clear enough for her to submit to a test and that no one wanted to answer her questions. She asked if her license would be suspended in two or three weeks. The officer stated her license would be active until she received the notice with the effective date for the suspension, which would be in at least two weeks. Defendant stated that she needed a license to get to work.

He told her the administrative hearing would determine whether the license suspension would be upheld but stated incorrectly that the suspension of her license would be stayed pending an administrative hearing. He reiterated that her license would remain active until a hearing. He also stated that the hearing examiner would determine when the suspension would go into effect. In response to the officer's statements, defendant stated, "So, they'll make determinations at that point." The officer responded, "Yes." The officer then asked her once more whether she wanted to take a test and she said no because she did not have clear information.

2

CONCLUSIONS

Defendant argues her due process rights were violated.

> The Due Process Clause of the Constitution prohibits deprivations of life, liberty, or property without "fundamental fairness" through governmental conduct that offends the community's sense of justice, decency and fair play . . . The test for determining whether state action violates the Due Process Clause . . . requires a court to consider: (1) the private interest that will be affected by the government's action; (2) the risk of an erroneous deprivation of such interest through the existing procedure and the probable utility of additional or substitute procedural safeguards; and (3) the government's interest in adhering to the existing procedure, including fiscal and administrative burdens that additional procedures might entail.

Roberts v. Maine, 48 F.3d 1287, 1291-92 (1st Cir. 1995). The loss of a driver's license "is a property interest worthy of due process protection." State v. Stade, 683 A.2d 164, 166 (Me. 1996).

In Roberts, the officer did not inform defendant of a minimum mandatory sentence for a failure to take a test. Defendant later received that sentence. The court determined the officer's action deprived defendant "of liberty in a manner lacking in fundamental fairness and offensive to the universal sense of fair play." Roberts, 48 F.3d at 1292. In Stade, the officer incorrectly assured defendant not to worry about losing his license because he could obtain a driver's license for work purposes. Stade, 683 A.2d at 165. Based on that false information and the officer's failure to read the implied consent form, the suppression of the blood-alcohol test was affirmed on due process grounds. Id. at 166. In State v. Bavouset, the officer incorrectly told defendant the mandatory period of incarceration for a refusal was 48 hours as opposed to the required 96 hours. See State v. Bavouset, 2001 ME 141, ¶ 2, 784 A.2d 27. In distinguishing Stade, the court found no violation of due process because the officer informed defendant about a

3

minimum mandatory sentence for a refusal but misstated the duration of the incarceration. See id. ¶ 5.

In this case, when the officer told defendant her license would be suspended for 90 days for a refusal as opposed to the required 150 days, defendant was misled about the duration of a suspension and not the fact of suspension. See id. There was no due process violation based on that statement by the officer.

A defendant does not have "a constitutional right to a warning of all possible consequences of refusing to submit to a chemical test." State v. Cote, 1999 ME 123, ¶ 10, 736 A.2d 262 (failure to inform defendant that his prior two refusal convictions could enhance his OUI charge to a class C offense). There is, however, a "strong due process justification for requiring law enforcement officials . . . to refrain from giving drivers assurances that minimize the seriousness of a subsequent loss of license privileges." Stade, 683 A.2d at 166. The State has no legitimate interest in allowing its law enforcement officers "to affirmatively mislead citizens about the consequences of taking or failing to take a blood-alcohol test." Id.

As in Stade, the officer in this case affirmatively misled defendant. He stated in definite terms that her suspension would be stayed until an administrative hearing, that her license would remain active until that time, and that the hearing examiner would determine when the suspension would go into effect. Defendant's statement that the hearing examiner would "make determinations at that point" suggests that she understood the suspension would be stayed. Although, unlike in Stade, the officer read the implied consent form to defendant, the form does not address the administrative hearing or a stay of a license suspension.

In Roberts, defendant was not informed about the minimum mandatory sentence for a refusal and refused to take the test. Roberts, 48 F.3d at 1289. In Stade, defendant

4

agreed to take a test after assurances he could obtain a license for work purposes. Stade, 683 A.2d at 165. In this case, defendant had already signed the refusal form at the time of the officer's statements about a license stay. Accordingly, after the officer addressed defendant's concern about a suspension in terms that were incorrect but favorable to her, she continued to decline to take a test. When the officer asked once more after his misstatement whether she would submit to the test, she said no because she did not have clear information. Unlike in Roberts and Stade, therefore, there is no nexus in this case between the officer's incorrect statements and defendant's refusal. The officer's misstatement "does not offend the community's sense of justice, decency, or fair play" and defendant was not deprived of fundamental fairness. Bavouset, 2001 ME 141, ¶ 8, 784 A.2d 27.

The entry is

Defendant's Motion to Suppress is DENIED.

Date: July 5, 2016

Nancy Mills
Justice, Superior Court

5

STATE OF MAINE
CUMBERLAND, ss

UNIFIED CRIMINAL DOCKET
DOCKET NUMBER: CUMCD-CR-2015-7305

STATE OF MAINE

v.

Myra Brooker

*
*
*
*
*

**DEFENDANT'S _AMENDED_ MOTION
TO SUPPRESS
M.R.Crim.P. 41A(a)**

**NOW COMES** the Defendant, Myra Brooker, by and through her attorney, William T. Bly, and moves to suppress the State's evidence obtained in violation of her State and Federal Constitutional Rights.

## STATEMENT OF THE FACTS

On December 11, 2015, after cooperating with field sobriety tests, the Defendant, Myra K. Brooker (herein "Brooker"), was arrested by Scarborough police, and charged with Operating under the Influence ("OUI") (Scarborough Police Report Page 1). After her arrest, officers brought Brooker to the police station, and began the process of administering an Intoxilyzer test to Brooker. Brooker wanted to know the consequences of not taking the test, so Officer Hebert gave her a copy of, and began reading from, the Implied Consent Form. During this time period, Officer Hebert informed Brooker that "it's your right if you want to refuse but I have to read you these consequences." After indicating she understood the first two paragraphs of the form, Brooker told Officer Hebert that she did not understand the third paragraph, and asked for clarification. Officer Hebert kept reading paragraph three, and when asked if she understood, Brooker stated she did not, as she needed more information. She began asking questions about the implications of her not taking the test. Specifically, she wanted to know information regarding possible fines, jail time, and license suspension. Hebert advised her to look at paragraph three for that information. While Officer Hebert refrained from answering some of her specific questions, he did speak to her regarding the length of her suspension if she registered at a level in between .08% - .15% Breath Alcohol

Content. He told her, erroneously, that she would likely face a ninety-day suspension if she registered at that level. In addition, Officer Hebert went into great detail about the BMV suspension process and indicated to Brooker that if she requested a hearing, a stay would be placed on her suspension and that when the hearing was conducted, if she lost, she wouldn't go under suspension until midnight of that night. That information was patently false.

After indicating she understood paragraph four of the Implied Consent form, she stated she would refuse to take the intoxilyzer test, based on the fact she did not have enough information to make the decision, especially with paragraph three, and then signed the form. She was then charged with OUI Refusal and transported to the Cumberland County Jail, where she was booked.

Brooker now files this Motion to Suppress Evidence regarding her refusal to take the intoxilyzer test. Because Officer Hebert's erroneous claims that she had a right to refuse to take a test, that her suspension would be ninety-days if she tested within a .08% - .15% BrAC range, as opposed to the correct one-hundred fifty day suspension, and that if she requested a BMV hearing, a stay would be placed on her suspension, which ostensibly would allow her to continue to drive, it is clear that her constitutional right of Due Process was infringed upon.

## ARGUMENT

"No state shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. "[W]hen a defendant asserts that the circumstances surrounding a refusal to take a blood-alcohol test have violated her right to due process, we review the procedures used by the police to determine if the conduct 'offends the community's sense of justice, decency, and fair play.'" *State v. Bavouset*, 2001 ME 141, ¶ 7, 784 A.2d 27 (quoting *Roberts v. State of Maine*, 48 F.3d 1287, 1291 (1st Cir. 1995)).

> In determining whether state action violates the due process clause, a court considers: (1) the private interest that will be affected by the government's action; (2) the risk of an erroneous deprivation of such an interest through the existing procedure and the probable

utility of additional or substitute procedural safeguards; and (3) the government's interest in adhering to the existing procedure, including the fiscal and administrative burdens that additional procedures might entail.

*State v. Stade*, 683 A.2d 164, 166 (Me. 1996) (quoting *Mathews v. Eldridge,* 424 U.S. 319, 335, (1976)). "The process due an individual will 'vary from case to case ... to assure the basic fairness of each particular action according to its circumstances.'" *State v. Cote*, 1999 ME 123, ¶ 11, 736 A.2d 262. (quoting *Fichter v. Board of Envtl. Protection,* 604 A.2d 433, 437 (Me.1992)). "[L]oss of [a defendant's] driver's license is a property interest worthy of due process protection." *Stade*, 683 A.2d at 166, *See also State v. Savard,* 659 A.2d 1265, 1267 (Me.1995). "29–A M.R.S.A. § 2521(3) requires that before a blood-alcohol test is administered to a person suspected of operating under the influence, the law enforcement officer must inform the person of the consequences of the failure to submit to and complete a test." *Id.* at 165. "[A]n erroneous deprivation of liberty can result from a suspect's behavior under rather dubious circumstances, if not false pretenses, created by the state." *Roberts*, 48 F.3d at 1293. "[T]here is a strong due process justification for requiring law enforcement officials to inform drivers of implied consent information and to refrain from giving drivers assurances that minimize the seriousness of a subsequent loss of license privileges." *Stade*, 683 A.2d at 166. "When the warnings themselves or the actions or statements of law enforcement officials affirmatively and significantly mislead a driver, the driver's right to due process may be violated." *Cote*, 1999 ME 123, ¶ 18, 736 A.2d 262. "Finally, although the State's interest in preventing drunk drivers from operating on our highways is great, the State has no legitimate interest in allowing its law enforcement officers both to ignore the statutory requirements of the implied consent law and to affirmatively mislead citizens about the consequences of taking or failing to take a blood-alcohol test." *Stade*, 683 A.2d at 166. "It is therefore in the State's interest to meaningfully explain the consequences of refusal. To have its desired effect—persuading a suspect to submit to a chemical test—the warnings must be clear. *Cote*, 1999 ME 123, ¶ 16, 736 A.2d 262.

The courts in Maine have long held that Due Process rights can be violated when police give inaccurate information regarding the consequences of taking or refusing an intoxilyzer test. *See Roberts*, 48 F.3d at 1295. In *Roberts*, the defendant was not told that refusing to take the breathalyzer test would carry a mandatory two-day jail sentence if convicted of an OUI, and was not allowed to call his attorney before making the decision to refuse the test. *Id.* at 1288. The First Circuit vacated Robert's sentence, including the mandatory two-day incarceration, stating:

> We are faced here with a unique situation in which the sentencing consequences of incarceration are imposed not so much for the substantive criminal conduct itself but for the separate volitional act of refusing to cooperate with the investigation of that conduct. As such, an erroneous deprivation of liberty can result from a suspect's behavior under rather dubious circumstances, if not false pretenses, created by the state.

*Id.* at 1293. "Roberts thus had to make a decision with irrevocable consequences for his sentence after the state provided him with inaccurate information with which he was expected to make that decision. In other words, absent the inaccurate information, the two-day jail term may not have been imposed." *Id.* Because Roberts chose to not take the test based on false information provided to him by the police, and was not allowed to call his attorney, the Court found that imposing the two-day jail sentence on him violated his right to Due Process. In Brooker's case, we have a police officer, when discussing whether to take the test or not, misquoting the length of suspension by sixty days, informing her that she has a right to refuse and that if she refuses to take a test, the BMV will *stay* the suspension of her license if she requests a hearing. Absent the inaccurate information, Brooker may have decided to go along and submit to a test. Instead, she had to make a choice with irrevocable consequences, basing her decision off of the erroneous information Officer Hebert gave to her. Even though the *Roberts* case dealt with incarceration, and this case deals with license suspension, a stay of suspension and a right to refuse, the result is no different. *See Stade*, 683 A.2d at 166 ("[L]oss of [a defendant's] driver's license is a property interest worthy of due process protection."). Brooker was given inaccurate information in which she based her decision off of, and therefore the evidence of refusal must be suppressed.

While the Court denied a motion to suppress an OUI refusal in *State v. Bavouset*, the reasoning is distinguishable from Brooker's situation. 2001 ME 11, ¶ 1, 784 A.2d 27. In *Bavouset*, the police incorrectly informed the defendant that the mandatory incarceration period for refusing the test, should she be convicted, would be forty-eight hours, when in fact it was ninety-six hours. *Id.* at ¶ 2. The Law Court held that this misunderstanding was not a violation of Due Process, stating that, since the mistake was only in duration, not in fact, there was no violation in Due Process. *Id.* at ¶ 5. "[T]here exists no bright line past which an officer's misstatement must result in the suppression of evidence of a refusal. Rather, when a defendant asserts that the circumstances surrounding a refusal to take a blood-alcohol test have violated her right to due process, we review the procedures used by the police to determine if the conduct 'offends the community's sense of justice, decency, and fair play.'" *Id.* at ¶ 7 (quoting Roberts, 48 F.3d at 1291.). In Brooker's case, while there is also a mistake in duration rather than fact, there are other, more troubling misstatements and well-intentioned but erroneous advice and information given to the Defendant. Hebert's misinformation provided to Brooker "offended the community's sense of justice, decency, and fair play." *Id.* Brooker kept telling the officer that she did not understand the information, and Hebert, in his attempts to explain the paragraph #3 and the BMV process to the Brooker, provided misinformation on key areas that clearly drove Brooker's refusal to submit to a chemical test. "To have its desired effect—persuading a suspect to submit to a chemical test—the warnings [given by the police] must be clear", and this was not the case here. *Cote*, 1999 ME 123, ¶ 16, 736 A.2d 262. Brooker's case is distinguishable from the *Bavouset* case, and this Court should suppress the evidence regarding her refusal because the information she based her decision on was inaccurate, and therefore infringed on her right of Due Process.

Brooker's case is very similar to *State v. Stade*, and should therefore have a similar outcome of a suppressed refusal of an intoxilyzer test. In *Stade*, the defendant actually took the breathalyzer test, based off of the police officer's incorrect notion that he could get a work permit to drive, so as not to lose his ability to drive to work. 683 A.2d at 165. The Court ended up granting the motion to suppress the results of the

breathalyzer, stating that "[t]he officer, a friend of Stade's, made affirmative representations to Stade about Stade's ability to drive to and from work that had an impact on Stade's decision to submit to the blood-alcohol test" and that admitting the test results under these pretenses would violate "the fundamental fairness and due process factors" of an OUI trial. *Id.* at 166. In Brooker's case, not only did Officer Hebert made an affirmative representation about the length of her suspension, should she test in the .08% - .15% BAC level, he told her she had a right to refuse the test and that if she received a notice of suspension from the BMV that she should request a hearing, which would stay the suspension (*the natural conclusion thereof would be that she would be allowed to continue to drive*). Those statements had a marked impact on Brooker's decision to refuse the Intoxilyzer test, and therefore violated the fundamental fairness and due process factors associated with her charge. Brooker's Due Process rights were violated, and this Court should suppress any evidence regarding Brooker's refusal to take the intoxilyzer test.

**WHEREFORE**, Defendant respectfully prays for an Order granting suppression of the State's evidence including but not limited to all oral statements and physical evidence obtained in violation of her State and Federal Constitutional rights together with such other and further relief as to this Court seems just and proper.

Respectfully Submitted,                    Dated: June 8, 2016

William T. Bly, Esq.
Maine Bar No. 9776
Attorney for Ms. Myra Brooker

**THE LAW OFFICE OF WILLIAM T. BLY**
*Criminal Defense Group*
*P.O. Box 1871*
*Biddeford, Maine 04005-1871*
*Telephone: 207.571.8146*
*Facsimile: 207.571.8162*