MURISC# 372-18
135-18

STATE OF MAINE
CUMBERLAND, ss

UNIFIED CRIMINAL COURT
DOCKET NO. CR-17-02423

STATE OF MAINE )
)
v. )
)
RONALD BUTTS )

ORDER ON DEFENDANT'S
MOTION TO SUPRESS

This matter came before the court on November 16, 2017 for hearing on Defendant's motion to suppress. Defendant was present and represented by Attorney Robert Levine. The State was represented by Assistant District Attorney William Berry. In his motion to suppress, Defendant argues that his due process rights were violated and therefore any evidence related to his refusal to take a chemical test must be suppressed. At the onset of the hearing, Defendant stipulated that he was not challenging the basis for the stop or the probable cause for an arrest, but rather was only challenging the voluntariness of the test and/or refusal under a due process analysis.

The court heard the testimony of Officer Mary Pearson of the Scarborough Police Department and Defendant, and reviewed Defendant's Motion Exhibit 1, a copy of the intoxilyzer video. At the close of the hearing the court took the matter under advisement. Having considered all of the evidence presented and the argument of counsel, the court makes the following findings facts and conclusions of law upon which the Order set forth below is based:

Mary Pearson is employed as a police officer for the Town of Scarborough Police Department. She has been so employed for approximately thirty (30) years. She graduated from the Maine Criminal Justice Academy in Waterville. In addition to her training at the Maine Criminal Justice Academy, she has also received training specializing in the detection and apprehension of impaired drivers, including certification in standardized field sobriety tests and intoxilyzer administration. She went on to become trained, and served as an instructor for both standardized field sobriety testing and intoxilyzer administration. She currently holds the position of patrol sergeant.

On April 30, 2017, Sgt. Pearson was on routine patrol in a marked cruiser and in full uniform. At approximately 8:30 p.m. Sgt. Pearson was traveling south bound on Route One (1) in the Dunston area, which is a four (4) lane highway. She observed a vehicle, traveling on the wrong

1

side of the road, at an estimated speed of approximately 50 mph in the posted 35 mph zone. Based on her observations, Sgt. Pearson initiated a stop of the vehicle.

Sgt. Pearson identified the Defendant as the driver of the vehicle. Sgt. Pearson recognized the Defendant from a prior contact. During the initial contact on April 30, 2017, Defendant was very friendly, cordial, and cooperative, answering all of Sgt. Pearson's questions. Sgt. Pearson noted that Defendant had food on his chin as well as detected the odor of intoxicants and saw alcohol containers in the vehicle. Based on all of the circumstances available to Sgt. Pearson at the time, she asked Defendant to exit the vehicle and perform field sobriety tests. Sgt. Pearson asked Defendant if he was on any prescribed medication, whereupon Defendant informed her he had "PTSD" (post-traumatic stress disorder). Sgt. Pearson followed up again inquiring about whether he was taking any prescribed medication, to which Defendant responded, he was "all good." He did not elaborate further on any medical conditions or prescribed medication that he was taking. During this interaction, Defendant continued to be extremely cooperative and cordial, praising the police department.

During the administration of field sobriety testing, Sgt. Pearson described that Defendant was easy to get off track, but with redirection, he was able to focus on the tasks, and continued to be cooperative with the requests. Based on Sgt. Pearson's observations, she determined that she had probable cause to arrest Defendant for operating under the influence. When Sgt. Pearson placed Defendant under arrest and handcuffed him, Defendant's demeanor "instantaneously" changed, and he became verbally abusive, berating the officer. Defendant was transported to the Scarborough Police Department by Officer Jones, whose vehicle was more suited for the transport.

Sgt. Pearson and Officer Jones both arrived at the police department at the same time. Sgt. Pearson noted that Defendant appeared to be passed out in the rear of Officer Jones vehicle. Defendant was brought into the intoxilyzer room of the police department. This room was equipped with a video recording system. A copy of the approximately 29-minute video from the intoxilyzer room was admitted and has been reviewed the court in full.

After first entering the room, Defendant is seated in a chair near the instrument. Sgt. Pearson asked Defendant if he wore any dentures, and asked him to inspect his mouth, which Defendant allowed without incident. Sgt. Pearson informed Defendant that they needed to wait fifteen minutes, and then he could perform the test. Defendant stated, "Go ahead, fine." Sgt. Pearson then began asking Defendant some basic

2

identification questions, which Defendant initially answered. However, after a short period, Defendant became argumentative and non-responsive to the questions. During this timeframe, Sgt. Pearson's demeanor is direct, calm and professional. Defendant, after initially refusing to answer questions, continually stated, "just kill me" and "I want to die." Sgt. Pearson calmly attempted to de-escalate the situation. Defendant became increasingly hostile and belligerent during the fifteen-minute wait period. At one point Defendant indicated that he needed to scratch his nose, but could not due to the handcuffs. Sgt. Pearson accommodated his need, and assisted him in scratching his nose. Throughout the fifteen-minute wait period, Defendant oscillated between periods of loud and hostile outbursts and periods where he sat quietly.

Although he repeatedly talked over the officer, using profanity, and making hostile statements, Defendant remained seated, and responsive to the statements that were made by the sergeant. As Sgt. Pearson began to prepare the instrument for the test, Defendant again became agitated, but then would settled down. When she finally attempted to administer the test, Defendant again became agitated. At one point, the second officer in the room, who had remained silent until this point, interjected which caused a belligerent verbal response from Defendant.

Sgt. Pearson attempted to administer the intoxilyzer, but the sample was insufficient to engage the instrument or produce a result on the test. Although Sgt. Pearson attempted to explain to Defendant how to blow into the intoxilyzer to produce a sufficient sample, Defendant continued to be argumentative and hostile. Sgt. Pearson remained professional and calm throughout. When asked, if he would comply if given another chance, Defendant responded, "I'm not doing nothing." Defendant was aware during this time that he was being video recorded, referencing the camera in the room.

At this point Sgt. Pearson read the implied consent from a printed form. As she read, Defendant became more animated and vocal. At some point the second officer told him to be quiet, which caused further response. Sgt. Pearson, attempted to calm Defendant, and then continued reading the implied consent warning. She then informed Defendant that she had just read the "refusal form," and inquired if he would take the test, and again Defendant declined, by saying he was "not taking nothing." There is no evidence in the record that the Defendant signed the warning form after it was read to him. Sgt. Pearson then put out her hand to assist Defendant from the chair he was seated in. Defendant stood and said, "good" as he walked with Sgt. Pearson out of the room.

3

Sgt. Pearson acknowledged that Defendant's demeanor changed dramatically when she informed him that she was arresting him. She further suggested it was "like a light switch," and that his behavior at that point was very different from any prior interactions she had had with Defendant. However, Sgt. Pearson also acknowledged that she had not been around in Defendant's presence when he had consumed alcohol or when intoxicated.

Defendant testified that he suffers from post-traumatic stress disorder and is disabled as a result. He also testified that whenever anyone "places hands" on him, he blacks out. He testified that on April 30, 2017, while at the police department he did not remember one thing about being at the police department. He also asserted that he was not drunk, and he had only had one drink that night.

Defendant argued that his due process rights were violated.

The Due Process Clause of the Constitution prohibits deprivations of life, liberty, or property without "fundamental fairness" through governmental conduct that offends the community's sense of justice, decency and fair play. "Due process" is a flexible concept -- the process required by the Clause with respect to the termination of a protected interest will vary depending upon the importance attached to the interest and the particular circumstances under which the deprivation may occur. The test for determining whether state action violates the Due Process Clause, ... requires a court to consider: (1) the private interest that will be affected by the government's action; (2) the risk of an erroneous deprivation of such interest through the existing procedure and the probable utility of additional or substitute procedural safeguards; and (3) the government's interest in adhering to the existing procedure, including fiscal and administrative burdens that additional procedures might entail.

*Roberts v. Maine*, 48 F.3d 1287, 1291-92 (1st Cir. 1995). Maine courts have held that the loss of a driver's license "is a property interest worthy of due process protection." *State v. Stade*, 683 A.2d 164, 166 (Me. 1996). Defendant does not allege that Sgt. Pearson mislead Defendant in any way prior to or during her efforts to administer the test. The court finds that, unlike in *Stade* and *Roberts*, Sgt. Pearson did not make any erroneous or misleading statements to Defendant.

Sgt. Pearson informed Defendant of the consequences should he refuse. She read the printed implied consent form, and again offered

4

Defendant the opportunity to take the test. There was no due process violation in the administration of the test, and the reading of implied consent. The question of whether or not Defendant refused the test is a question of fact for the fact finder at trial.

Based on the foregoing, Defendant's Motion to Suppress is DENIED.

Dated: December 13, 2017

Deborah P. Cashman
Judge, Maine District Court