**STATE of Maine**

v.

**Donald D. CHISHOLM.**

Supreme Judicial Court of Maine.

Argued Sept. 7, 1989.
Decided Oct. 18, 1989.

Paul Aranson, Dist. Atty., Dana J. Laliberte (orally), Asst. Dist. Atty., Portland, for plaintiff.

David L. Brandt (orally), Holman & Brandt, Yarmouth, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

CLIFFORD, Justice.

In a case arising out of an October 3, 1987 collision on Commercial Street in Portland, resulting in the death of Robert Beale, defendant Donald D. Chisholm was convicted of manslaughter, 17–A M.R.S.A. § 203(1)(A) (1983 & Supp.1988), and operating under the influence of intoxicating liquor (OUI), 29 M.R.S.A. § 1312–B (Supp. 1988), after a nonjury trial in Superior Court (Cumberland County, *Fritzsche, J.*). In his appeal, Chisholm contends that evidence of his blood-alcohol content and statements that he made to police following the accident should have been suppressed. He also contends that the evidence was insufficient to convict him of manslaughter. We affirm the judgment.

Chisholm's first contention is that the result of his blood-alcohol test, taken in compliance with 29 M.R.S.A. § 1312, was not admissible against him on the· manslaughter charge. He argues that because the implied consent law requires that a person must be notified that "the failure ... to submit to a blood-alcohol test shall be admissible ... against him at any trial for operating under the influence," 29 M.R. S.A. § 1312(1), and because the statute makes no express provisions for its admissibility in a case other than operating under the influence, its use is limited to OUI cases. We disagree.

The implied consent statute is not designed to protect drivers from otherwise reasonable searches and seizures. *State v. Bellino*, 390 A.2d 1014, 1021 (Me.1978). It is, instead, designed to promote consensual searches and seizures through blood-alcohol testing, thereby deterring the operation of motor vehicles by intoxicated persons and promoting highway safety. *Id.* Contrary to Chisholm's contention, the implied consent law reveals a legislative policy favoring the admissibility of blood-alcohol evidence in all cases dealing with our highways. *State v. McConvey*, 459 A.2d 562, 568 (Me.1983).

29 M.R.S.A. § 1312(8) provides that the percentage of alcohol in a defendant's blood is "admissible in evidence" without restricting the admissibility to OUI cases. At the time of the Chisholm–Beale collision, section 1312(5)(C) expressly provided that the presumption that a person was under the influence when the blood-alcohol level is .10 percent or more applies to cases other than OUI.[1] The results of blood-alcohol tests are relevant to criminal negligence and reckless conduct, elements of manslaughter, and are admissible in manslaughter cases.[2] *State v. Herbest*, 551 A.2d 442, 446 (Me.1988). Indeed, those test results were admissible in vehicular manslaughter cases prior to section 1312(5) expressly providing for the presumption to be

---

1. 29 M.R.S.A. § 1312(5)(C), effective in October of 1987, provided as follows:

    C. For purposes of evidence in proceedings other than those arising under section 1312–B or 1312–C, it shall be presumed that a person was under the influence of intoxicating liquor when he has a blood-alcohol level of 0.10% or more by weight.

The presumption now applies to a blood-alcohol level of .08% or more. *See* P.L.1987, ch. 791, § 13.

2. 17–A M.R.S.A. § 203(1)(A) (1983 & Supp.1988) provides as follows:

    1. A person is guilty of manslaughter if he:
    A. Recklessly, or with criminal negligence, causes the death of another human being; ...

admissible in cases other than OUI. *State v. Carter,* 443 A.2d 958, 961 (Me.1982); *State v. Rhoades,* 380 A.2d 1023, 1026 (Me. 1977).

■ Chisholm also contends that because the police withheld from him the fact that Mr. Beale died in the collision,[3] he did not knowingly and intelligently consent to the blood test under the implied consent law. Chisholm also argues that the withholding of that information should have resulted in the suppression of his statements because he did not knowingly and intelligently waive his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and because his statements were not voluntary.[4]

The suppression court (*Alexander, J.*) determined that the officer was justified in invoking the implied consent provisions and that Chisholm's ignorance of the potential manslaughter charge did not render the blood test inadmissible. That determination was not clear error. The officer had probable cause to believe that Chisholm was the operator of the vehicle and that he was under the influence. *See State v. Baker,* 502 A.2d 489, 493 (Me.1985); 29 M.R.S.A. § 1312(1). Because probable cause existed, the test could have been administered without Chisholm's consent.[5] *Id.* at 495. *See also Schmerber v. California,* 384 U.S. 757, 770–71, 86 S.Ct. 1826, 1835–36, 16 L.Ed.2d 908 (1966); *State v. Libby,* 453 A.2d 481, 485 n. 4 (Me.1982).

■ The suppression court found that the failure of the police to inform Chisholm of the death did not affect the admissibility of the otherwise knowing and intelligent waiver of his *Miranda* rights. The suppression court also found that Chisholm's

statements were voluntary beyond a reasonable doubt. In *Colorado v. Spring,* 479 U.S. 564, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987), the United States Supreme Court held that awareness of all the possible subjects of questioning in advance of interrogation is "not relevant" to a voluntary, knowing and intelligent waiver of the defendant's privilege against self-incrimination. *Id.* at 578, 107 S.Ct. at 860. *See also State v. Condon,* 468 A.2d 1348, 1350 (Me. 1983), *cert. denied,* 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1983). In *Condon* we said that there was "no explicit requirement that a suspect must be informed of the exact nature of the crime for which he is being questioned" under *Miranda v. Arizona,* and that a person's ignorance of the fact that he was a murder suspect did not *per se* make a waiver of his rights unknowing and unintelligent. *Condon,* 468 A.2d at 1350. Here, as in *Spring,* the failure of law enforcement officials to fully disclose the subject matter of the interrogation affected "only the wisdom of [the] *Miranda* waiver, not its essential voluntary and knowing nature," and did not impact Chisholm's fifth amendment rights. *Spring,* 479 U.S. at 576–77, 107 S.Ct. at 858–59. We find no error in the suppression court's refusal to suppress the statements.

■ Chisholm's final contention is that the evidence is insufficient to support the conviction of manslaughter. We review the evidence in a light most favorable to the State to determine if the court rationally could have found every element of manslaughter beyond a reasonable doubt.

---

3. Although there was some dispute whether the police deliberately withheld the fact of Beale's death from Chisholm, the record is clear that no affirmatively misleading statements were made to Chisholm.

4. Chisholm made both oral and written statements concerning his activities that night, the amount of alcohol he consumed and his version of the accident. Those statements were made after his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), were read to him and he stated that he under-

stood them and would be willing to speak without the presence of an attorney.

5. 29 M.R.S.A. § 1312(11)(D), enacted as P.L. 1987, ch. 791, § 17 (effective August 4, 1988), provides in pertinent part:
   D. Notwithstanding any other provisions of this section, each operator of a motor vehicle involved in a motor vehicle accident which results in the death of any person shall submit to and complete a test to determine that person's blood-alcohol level by analysis of such blood or breath.

*Herbest,* 551 A.2d at 447; *State v. Barry,* 495 A.2d 825, 826 (Me.1985).

The evidence showed that Chisholm had consumed a large amount of alcohol and was under the influence of intoxicating liquor. Eyewitness and physical evidence, as well as expert testimony, indicated that Chisholm's one-ton truck crossed the centerline of the street into the victim's lane of traffic resulting in the collision and the death of Mr. Beale. Although there was some contrary expert evidence, that evidence was specifically rejected by the trial court, and its determination of guilt was supported by the record. *State v. Gammon,* 529 A.2d 813, 815 (Me.1987). We do not address the other contentions of Chisholm, which we find to be without merit.

The entry is:

Judgment affirmed.

All concurring