1999 ME 123

**STATE of Maine**

v.

**Patrick COTE.**

Supreme Judicial Court of Maine.

Submitted on Briefs June 29, 1999.

Decided July 30, 1999.

Stephanie Anderson, District Attorney, Julia Sheridan, Asst. Dist. Atty., Portland, for the State.

Robert A. Levine, Portland, for the defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, and ALEXANDER, JJ.

SAUFLEY, J.

[¶ 1] Patrick Cote appeals from a judgment entered in the Superior Court (Cumberland County, *Fritzsche, J.*) upon a jury verdict finding him guilty of operating after habitual offender revocation, 29–A M.R.S.A. § 2557 (1996 & Supp.1998), and operating under the influence, 29–A M.R.S.A. § 2411 (1996 & Supp.1998). On appeal, Cote contends that his constitutional right to due process of law was violated when the court applied 29–A M.R.S.A. § 2411(5)(D) to require the use of two prior refusal suspensions to enhance his OUI conviction to a Class C offense. We disagree and affirm the judgment.

## I. BACKGROUND

[¶ 2] On August 13, 1997, Officer Thomas Harriman of the Bridgton Police Department noticed three individuals— Calvin Hartzell, Linda Ashe, and Cote—in a local convenience store. When the cashier refused to sell alcohol to them, Harriman suspected that the individuals were intoxicated. Because the group had driven into the parking lot in one car, he sought to determine who had been driving. Harriman ultimately asked the cashier whether she had seen which of the three had driven the car into the parking lot. She identified Cote as the driver.[1]

[¶ 3] Cote's eyes appeared bloodshot and he admitted consuming "a few beers." Harriman therefore conducted several field sobriety tests with Cote. When Cote performed poorly on the tests, Harriman arrested him for operating while under the influence of intoxicants and transported him to the Bridgton Police Department in order to conduct a chemical test. After being read the implied consent form, Cote indicated his understanding of its contents, signed the form, and refused to submit to the test.

[¶ 4] The Cumberland County Grand Jury indicted Cote for operating after habitual motor vehicle offender revocation (Class C), pursuant to 29–A M.R.S.A. § 2557; for OUI (Class C), pursuant to 29–A M.R.S.A. § 2411; and for illegal attachment of plates (Class E), pursuant to 29–A M.R.S.A. § 2104 (1996 & Supp.1998). At the time of his arrest, Cote's license was revoked as a result of a prior habitual offender conviction and, on two prior occasions, his license had been suspended when he refused to submit to a chemical test. *See* 29–A M.R.S.A. § 2521(5) & (6) (1996 & Supp.1998).

---

1. Cote was tried twice for OUI. At the first trial, Hartzell did not testify. The jury was unable to reach a verdict, and the court declared a mistrial. At the second trial, Hartzell testified that he was sitting in the front passenger's seat of Cote's car when it entered the convenience store parking lot. Although he could not recall whether Cote or Ashe was driving, Hartzell testified that Cote subsequently admitted that he was the driver.

[¶ 5] Cote filed a motion challenging the classification of his OUI charge as a Class C crime, contending that enhancing an OUI charge to a Class C crime because of two prior refusal suspensions violated his right to due process.[2] The court denied the motion.

[¶ 6] The State dismissed the charge of illegal attachment of plates, and a jury subsequently convicted Cote of OUI and for operating after habitual motor vehicle offender revocation. On the Class C OUI conviction, the Superior Court sentenced Cote to four years in prison, a $2400 fine, and a six-year license suspension.[3]

## II. DISCUSSION

[¶ 7] Cote contends that the court violated his constitutional right to due process of law by applying 29–A M.R.S.A. § 2411(5)(D) to require the use of his two prior refusal suspensions in order to enhance his OUI conviction to a Class C offense.[4] He argues that such a use violates his right to due process because the implied consent form failed to inform him, prior to his refusal, that the refusal had ramifications beyond those specifically enumerated in the form.

[¶ 8] By statute, law enforcement officials must inform a suspect that a refusal to submit to and complete the test will:

A. Result in suspension of that person's driver's license for a period of up to 6 years;

B. Be admissible in evidence at a trial for operating under the influence of intoxicants; and

C. Be considered an aggravating factor at sentencing if the person is convicted of operating under the influence of intoxicants that, *in addition to other penalties,* will subject the person to a mandatory minimum period of incarceration.

29–A M.R.S.A. § 2521(3) (Supp.1998) (emphasis added). The implied consent form read to Cote contained each of these warnings.

[¶ 9] It is evident that the warnings, while alerting the individual to possible grave consequences of a refusal to take the test, do not explicitly inform a suspect that a refusal to submit to a chemical test can be used to enhance a future OUI conviction to a felony. Because Cote did not dispute the determination that he refused to take the test or that he did receive the warnings, his contention must be understood as an assertion that his refusal can-

2. "[A] person having 3 or more previous OUI offenses within a 10–year period," is guilty of a Class C crime. *See* 29–A M.R.S.A. § 2411(5)(D). An OUI offense is defined as any "OUI conviction or suspension for failure to submit to a test." 29–A M.R.S.A. § 2401(11) (1996). A Class C OUI conviction is punishable by a fine of not less than $2000; a period of incarceration of not less than six months; a six-year license suspension; and a court ordered suspension of the right to register an automobile. *See* 29–A M.R.S.A. § 2411(5)(D). Because Cote refused to submit to a breath test, the current OUI offense is aggravated to a fine of not less than $2400 and a period of incarceration not less than 6 months and 20 days. *See id.* If Cote's two previous refusal suspensions were not considered OUI offenses, he would be guilty of only a Class D offense, punishable by a fine not less than $800 and a period of incarceration not less than 12 days. *See* 29–A M.R.S.A. § 2411(5)(B).

3. Cote was sentenced concurrently to four years in prison for his habitual offender conviction. The severity of his sentence reflected his extensive record of motor vehicle related offenses. In addition to two refusal suspensions and one OUI conviction, Cote has four previous habitual offender convictions. At sentencing, the court noted that "unless [Cote] changes his ways, [he] is likely to kill himself or kill somebody else in an accident."

4. Cote does not argue that his rights were violated because his previous refusal suspensions were uncounselled. *See State v. Cook,* 1998 ME 40, ¶ 11, 706 A.2d 603, 606–07 (due process does not prevent the state from using prior uncounselled misdemeanor OUI convictions to enhance sentence for present OUI conviction).

not be used against him for any purpose not disclosed in the warnings.

[¶ 10] It has never been held that a defendant has a constitutional right to a warning of all possible consequences of refusing to submit to a chemical test. *See South Dakota v. Neville*, 459 U.S. 553, 565–66, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983); *State v. Roberts*, 609 A.2d 702, 703–04 (Me.1992); *Cf. State v. Plante*, 417 A.2d 991, 993–94 (Me.1980). In *Roberts*, we addressed and rejected a similar constitutional challenge where the defendant argued that his due process rights were violated because Maine's implied consent form did not require an officer, prior to administering a chemical test, to inform the person that failure to submit to a chemical test is considered an aggravating factor at sentencing, resulting in a minimum period of incarceration of not less than 48 hours. *See* 609 A.2d at 703–04. We concluded that "allowing the suspect to choose whether to submit to testing was 'a matter of grace' bestowed by the state legislature and, thus, not subject to constitutional protections." *Id.* at 703 (quoting *Neville*, 459 U.S. at 565, 103 S.Ct. 916).[5]

[¶ 11] Although we have not recognized a rigid constitutional protection for unwarned ramifications of refusing to submit to a chemical test, we do review the procedures used by the government in order to determine whether those procedures violate the defendant's due process rights through "conduct that offends the community's sense of justice, decency, and fair play." *Roberts v. State of Maine*, 48 F.3d 1287, 1291 (1st Cir.1995) (citations omitted).[6] The process due an individual will " 'vary from case to case ... to assure the basic fairness of each particular action according to its circumstances.' " *Fichter v. Board of Envtl. Protection*, 604 A.2d 433, 437 (Me.1992) (quoting *Secure Env'ts, Inc. v. Town of Norridgewock*, 544 A.2d 319, 324–25 (Me.1988)).

[¶ 12] The now familiar test for determining whether a state action violates a citizen's right to due process under the constitution is set out in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). It requires us to consider (1) the private interest that will be affected by the State's action; (2) the risk of an erroneous deprivation of that private interest along with the probable utility of substitute or added safeguards; and (3) the government's interest in adhering to the existent procedure. *See Roberts*, 48 F.3d at 1292 (citing *Mathews*, 424 U.S. at 335, 96 S.Ct. 893).

[¶ 13] The private interest asserted here is best described as the defendant's right to be informed of the consequences of his actions before deciding what action to take. The consequences of Cote's refusing to submit to a chemical test may result in an increased jail sentence for future OUI convictions. Although that consequence implicates Cote's liberty interests and is worthy of due process consideration, *see generally United States v. Salerno*, 481 U.S. 739, 750, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), the interests at stake here are less compelling than those presented in *State v. Roberts*, 609 A.2d 702, where we found no due process violation. In *Roberts*, the defendant was not warned that, if convicted of OUI, his refusal would be considered an aggravating factor at sentencing resulting in a minimum period of incarceration of 48 hours. *See id.* at 703–04. In contrast, Cote was not warned of the consequences his refusal would have

---

5. *Accord People v. Wegielnik*, 152 Ill.2d 418, 178 Ill.Dec. 693, 605 N.E.2d 487, 491 (1992); *State v. Crandall*, 133 Wis.2d 251, 394 N.W.2d 905, 906–07 (1986).

6. The Due Process Clauses of the Maine and federal constitutions prohibit deprivations of "life, liberty, or property, without due process of law." Me. Const. art. 1, § 6–A; U.S. Const. amend. XIV, § 1. Due process concepts embodied in the Maine Constitution provide no greater protection to individuals than do those concepts contained within the United States Constitution. *See State v. Anderson*, 1999 ME 18, ¶ 9, 724 A.2d 1231, 1234.

on future OUI convictions. Although he was potentially subject to consequences of which he was uninformed, in the absence of future OUI convictions his refusal would have no additional consequences. Thus, to the extent that Cote could allege a deprivation of a valid liberty interest which implicates due process, it would be significantly more tenuous interests than those presented in *Roberts*.

[¶ 14] With respect to the risk of an erroneous deprivation of Cote's liberty interest, failing to warn Cote of the potential consequences of refusing to submit to a chemical test will certainly not increase the risk that he will be convicted of OUI in the future. The absence of a complete listing of all possible ramifications of refusal, however, may subject him to the risk of future penalties for a past refusal that, at the time of the future criminal activity, cannot be undone.[7] We must therefore balance his interest in avoiding heavier penalties for future criminal behavior against the State's interest in the existing procedure.

[¶ 15] To avoid the risk that Cote would suffer consequences of which he was not informed, the State would be required to change the warnings provided to suspects prior to administering a chemical test each time a new consequence presented itself. The State's interest in avoiding that administrative burden outweighs Cote's interest in being notified of every potential consequence of refusal.

■ [¶ 16] In addition to the administrative burden on the State, articulating every possible consequence of refusal would frustrate the legislative purpose of the statute. The implied-consent statute is designed to promote consensual searches and seizures, "thereby deterring the operation of motor vehicles by intoxicated persons and promoting highway safety." *State v. Chisholm*, 565 A.2d 92, 93 (Me.1989) (citation omitted). The law reflects a legislative policy favoring the admissibility of chemical evidence in cases dealing with our highways. *See id.* The warnings of the consequences for refusing to take a chemical test motivates drivers to take the test, allowing the State to obtain objective evidence of intoxication. It is therefore in the State's interest to meaningfully explain the consequences of refusal. *See Neville*, 459 U.S. at 566 n. 17, 103 S.Ct. 916. To have its desired effect—persuading a suspect to submit to a chemical test—the warnings must be clear. Explaining every possible consequence of refusal would result in a "laundry-list" of warnings, too long and cumbersome to provide the defendant with any meaningful notice. Under the circumstances, the State's interest in maintaining a brief, clear set of warnings addressing primarily the immediate consequences of a refusal to take a chemical test outweighs Cote's interest in being notified of all the potential consequences of refusal.

■ [¶ 17] Accordingly, the failure to warn a defendant of every possible consequence of his decision does not rise to the level of a due process violation when the defendant is sufficiently warned that his refusal will have significant negative consequences.

■ [¶ 18] We also reject Cote's inference that there were special circumstances here that rendered his decision to refuse the test unfair. When the warnings

---

7. Drivers are not without recourse if an erroneous determination of refusal is made. Any driver determined to have refused a test is afforded an opportunity to challenge the refusal suspension at an administrative hearing. A person whose license has been suspended for refusing to take a breath test has the right to a hearing within 30 days of the notification of suspension. *See* 29–A M.R.S.A. § 2483 (1996). The hearing officer must consider, *inter alia*, whether the law enforcement official had probable cause to believe the person operated under the influence of intoxicants, whether the police officer read the implied consent form, and whether the person failed to submit to the test. *See* 29–A M.R.S.A. § 2521(8). Under certain circumstances, the defendant may have the record expunged to eliminate any reference to a refusal. *See* 29–A M.R.S.A. §§ 2485(3) (1996), 2521(7).

themselves or the actions or statements of law enforcement officials affirmatively and significantly mislead a driver, the driver's right to due process may be violated. In *South Dakota v. Neville*, the Supreme Court concluded that failing to warn the defendant that refusal could be used as evidence against him at trial did not violate due process because the warnings provided by the officer did not assure the defendant that he would be subject to no other consequences than those mentioned. *See* 459 U.S. at 565–66, 103 S.Ct. 916. In the absence of misleading assurances which may unfairly "trick" the defendant, the failure to warn of every consequence of refusal does not violate due process. *Id.* at 566, 103 S.Ct. 916. Consistent with this approach, we concluded in *State v. Stade*, 683 A.2d 164 (Me.1996), that, where a police officer erroneously recommended to the driver that he should submit to a chemical test because, if convicted of OUI, he could obtain a license for work purposes, and where the officer failed to read the implied consent form to the driver, the defendant's right to due process was violated. *See id.* at 166.

[¶ 19] Cote does not assert that any false or misleading information was given to him at the time he chose not to submit to the chemical test. Rather, he merely asserts that the warning he did receive did not contain all possible consequences of his refusal, both immediate and prospective.[8]

[¶ 20] The form read to Cote, however, warned that "*in addition to other penalties*," refusing to submit will subject him to a minimum period of incarceration. While the reference to other penalties may be understood to apply to penalties to be imposed along with the incarceration for the instant offense, it unmistakably alerts the driver to the existence of undisclosed but serious collateral consequences. Thus, faced with the choice of whether to submit to a chemical test, Cote could not help but be aware that refusing to take the test was not a "safe harbor" and could have serious repercussions. *See Neville*, 459 U.S. at 566, 103 S.Ct. 916. The warnings gave no indication that they were finite or that no other consequences could be visited upon a person who declined to take the test. We conclude that these warnings were sufficient to put Cote on notice that a refusal may well affect his future in negative ways. The immediate impact of the refusal having been unambiguously set out in the warning, Cote was not in any way misled into believing that refusal to take the test was free of future adverse consequences.

[¶ 21] We find no violation of Cote's right to due process of law in the use of the refusal suspension to enhance his recent OUI conviction to a Class C crime. The other issues raised by Cote do not merit discussion.

The entry is:

Judgment affirmed.

---

8. Cote's apparent reliance on the First Circuit's opinion in *Roberts v. State of Maine*, 48 F.3d 1287 (1st Cir.1995), is misplaced. Following our affirmance of Roberts's conviction, Roberts petitioned the First Circuit for a writ of habeas corpus. *See id.* at 1289–90. The First Circuit granted the writ after determining that his conviction was fundamentally unfair because, although Maine's implied consent form in effect at that time purported to inform a person of the consequences of refusing to submit to a chemical test, it failed to inform the driver that, if convicted, refusing to submit would result in an immediate mandatory two-day jail sentence, and Roberts's repeated requests to call his attorney prior to making a decision regarding the test were refused. *See id.* at 1292–95. No such combination of facts occurred here. Cote was informed that, if convicted of OUI, his refusal could result in a minimum period of incarceration for the instant offense, and he concedes that he had no right to counsel before deciding whether to refuse.