STATE OF MAINE                      SUPERIOR COURT
PENOBSCOT, ss                      CIVIL ACTION
                                   DOCKET NO. AP-2004-13
                                   AMM - PEN - 3/17/2005


RYAN GOODMAN,                      )
                                   )
               Petitioner          )
                                   )
v.                                 )          DECISION AND
                                   )          ORDER
STATE OF MAINE,                    )
                                   )
and                                )
                                   )
DEPARTMENT OF THE SECRETARY        )
OF STATE,                          )
                                   )
               Respondents         )

FILED & ENTERED
SUPERIOR COURT

MAR 17 2005

PENOBSCOT COUNTY

This matter is before the Court on appeal pursuant to 5 M.R.S.A. §§11001-11008

(Supp. 2004) and Rule 80C of the Maine Rules of Civil Procedure from a decision of the

Respondents, State of Maine, Department of the Secretary of State (herein "**Secretary**"),

suspending the Petitioner's license for eighteen months for refusing to submit to a test

and an additional 180 days because he was carrying a passenger under the age of twenty-

one while he had any amount of alcohol in his blood pursuant to 29-A M.R.S.A. §§

2472(4), 2521(8) (Supp. 2004).  The Court affirms the decision.

## Background

Around midnight on October 18, 2003 Officer Joshua Tibbetts and a second

officer, both of the Penobscot County Sheriff's Department, received information from

the Hampden Police Department that under age drinking was occurring at a party in

Newburgh.  The officers went to the general location and stopped their cruisers at a "T"

intersection.  A single vehicle approached them and was forced to stop because the

1

cruisers were in their path. While one officer spoke with the driver of the first vehicle, other vehicles, including the Petitioner's, approached the intersection and a line formed. The road was too narrow for any vehicles to pass each other, so the Hearing Officer found that is was unlikely that a vehicle was on that road for very long. Eventually, Officer Tibbetts approached the Petitioner's vehicle. The Petitioner gave Officer Tibbetts a drivers license which indicated that he was under the age of twenty-one. The passenger of the vehicle, identified as Gabriel Kaelin, was identified by name. Officer Tibbetts testified that Kaelin told him his birthday, which indicated to Officer Tibbetts that he was also less than twenty-one years old. Officer Tibbetts noted, and later testified, that the Petitioner's eyes were red and glossy and his facial area smelled of intoxicants even though he was chewing a fresh piece of gum. The Petitioner denied consuming any intoxicants and Officer Tibbetts began to administer field sobriety tests.

The Officer observed four out of the six clues on the Horizontal Gaze Nystagmus test. He also observed that the Petitioner was slurring his speech, was unbalanced and that he almost fell on one occasion. The Petitioner also failed to follow one direction on the walk/turn test, started before being instructed to do so and was unable to pivot accurately. The Petitioner completed the alphabet test and the one leg stand test appropriately. Officer Tibbetts concluded that he had probable cause to believe that the Petitioner was under the age of twenty one, that his passenger was under the age of twenty-one and that he was operating a motor vehicle with any amount of alcohol in his blood. Officer Tibbetts transported the Petitioner to the Penobscot County jail to take an intoxilyzer test.

2

On the way to the jail, the Petitioner continually argued that his civil rights were being violated an that he was not going to take any tests. When they arrived at the jail, another officer informed Officer Tibbetts that the intoxilyzer test was registering a radio frequency interference (herein "**RFI**"). Officer Tibbetts and the other officers checked to make sure their portable radios were turned off. Officer Tibbetts, a certified intoxilyzer operator, then entered the information into the intoxilyzer and it indicated an "active" status with no RFI. During this time, Officer Tibbetts was encouraging the Petitioner to take the test. When the intoxilyzer was ready to receive a sample, Officer Tibbetts asked the Petitioner to take the test, but he refused to do so, stating that he did not want "incriminating results" based on a wrong reading. However, the Petitioner also testified at the later hearing that he was aware that the intoxilyzer would not yield a result if it was indicating an RFI. After this refusal, Officer Tibbetts explained the consequences of refusing and read and allowed the Petitioner to read the implied consent form. The Petitioner read and signed the form. During that discussion, the intoxilyzer indicated a RFI again. Officer Tibbetts decided to give the Petitioner one last chance and rebooted the instrument. It indicated an "active" status. However, once again, the Petitioner refused to take the test. The intoxilyzer registered a RFI again after this refusal and automatically shut down.

The Secretary suspended the Petitioner's license for eighteen months under 29-A M.R.S.A. § 2472(4)(A) (for refusing to submit to the test) and an additional 180 days under 29-A M.R.S.A. § 2472(4) (for having a passenger in the car under the age of twenty-one). After a requested hearing, the Hearing Officer affirmed the Secretary's decision and found that there was probable cause to believe that the Petitioner was under

3

twenty-one and operated a motor vehicle with any amount of alcohol in the blood; that the Petitioner was informed of the consequences of failing to submit to a test and; that the Petitioner failed to submit to a test. The Hearing Officer also found that the passenger in the Petitioner's vehicle was under the age of twenty-one. This appeal followed.

## DISCUSSION

### A. Standard of Review

The Court's review of the Respondents' determination is very limited. Agency rulings may be reversed or modified on appeal only if the Court determines that they are: (1) in violation of constitutional or statutory provisions, (2) in excess of the statutory authority of the agency, (3) made upon unlawful procedure, (4) affected by bias or error of law, (5) unsupported by substantial evidence on the whole record or (6) arbitrary or capricious or characterized by abuse of discretion. 5 M.R.S.A § 11007(4)(C) (Supp. 2004).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support the resulting conclusion." Lewiston Daily Sun v. Maine Unemployment Ins. Comm'n, 1999 ME 90, ¶ 7, 733 A.2d 344, 346. The Court may not substitute its judgment for that of the agency merely because the evidence could give rise to more than one result. Dodd v. Sec'y of State, 526 A.2d 583, 584 (Me. 1987). "The burden of proof clearly rests with the party seeking to overturn the decision of an administrative agency." Seven Islands Land Co. v. Maine Land Use Regulation Comm'n., 450 A.2d 475, 479 (Me. 1982). In cases where conflicting evidence is presented, the Law Court has repeatedly held that such conflicts are for the fact finder to resolve. Bean v. Maine Unemployment Ins. Comm'n, 485 A.2d 630, 634 (Me. 1984).

## B. Applicable Law.

### 1.    Probable Cause

29-A M.R.S.A. § 2472(4) states that:

a person under 21 years of age who operates a motor vehicle shall submit

to a chemical test if there is probable cause to believe that the person has

operated a motor vehicle with any amount of alcohol in the blood. The ..

. suspension is:

A.  Eighteen months for the first refusal. . . .

If the Secretary determines that the person operated the motor vehicle at

the time of the offense with a passenger under 21 years of age, an

additional suspension of 180 days must be imposed.

The Hearing Officer only had to determine, by a preponderance of the evidence: 1) was there probable cause to believe that the Petitioner was under the age of twenty-one; 2) whether there was probable cause to believe that the Petitioner had any alcohol in his blood; 3) was there probable cause to believe that the Petitioner had operated the motor vehicle; 4) whether the Petitioner was informed of the consequences of failing to submit to a test; and 5) whether the passenger in the vehicle was under the age of twenty-one. 29-A M.R.S.A. §§ 2472 (5), 2521(8).

The Petitioner argues that there was not probable cause to find that the Petitioner had any alcohol in his blood or that the Petitioner had operated a motor vehicle  The Petitioner does not dispute that the Hearing Officer erred in finding that he had not attained the age of twenty-one. The Petitioner also argues that the evidence was not

sufficient to show that the passenger was under the age of twenty-one and puts forth some constitutional arguments.

### a. Probable Cause Concerning Alcohol in the Blood

The Law Court has set a very low threshold when it comes to probable cause in this situation. In State v. Webster, 2000 ME 115, 754 A.2d 976, the Law Court stated that, in the context of a conviction for operating a motor vehicle under the influence, probable cause exists when, "the person's senses are affected to the slightest degree, or to any extent, by the alcohol that person has had to drink . . . . Id. ¶ 7, 754 A.2d at 977-78.

Here, where the officer only had to determine whether there was probable cause to believe that there was any alcohol in the Petitioner's blood, the threshold is at least the same, if not lower. An examination of the record reveals that there more than enough evidence for the Hearing Officer to have found that there was probable cause to believe that the Petitioner had any amount of alcohol in his blood. There was testimony concerning that the Petitioner's eyes were red and glossy and that he smelled of alcohol. This alone would be sufficient to find probable cause. However, the Petitioner also failed a number of field sobriety test and was slurring his speech. There was testimony that he appeared unbalanced and almost fell. In short, there was more than enough evidence to find that there was probable cause to believe that the Petitioner had alcohol in his blood.

### b. Probable Cause Concerning the Operation of the Vehicle

The Petitioner argues that there was not probable cause to believe that he was operating the vehicle when Officer Tibbetts observed him. He argued at the hearing that he last operated his vehicle two hours before the arrest and that his vehicle was parked in that same location. The Hearing Officer found this to be "unpersuasive" given all the

evidence. An examination of the record supports this conclusion. The officers observed a number of vehicles line up behind the first vehicle within moments after the first vehicle arrived. He surmised that one of those vehicles was the Petitioner's as there was evidence that the road was not wide enough for cars to pass, thus undermining the Petitioner's contention that his vehicle was parked for a long time without causing a traffic jam. The Petitioner was in the driver's seat, the vehicle was running and the headlights were on. Finally, the Petitioner never once denied driving the vehicle. There was more than enough evidence for the Hearing Officer to find that there was probable cause to believe that the Petitioner was operating the vehicle.

2.    *Passenger Under the Age of Twenty-One*

29-A M.R.S.A. § 2472 mandates and additional suspension period of 180 days if the Secretary of State determines that a person, under twenty-one, with any alcohol in the blood, also operated the motor vehicle with a passenger under the age of twenty-one.

The Petitioner argues that the Hearing Officer erred in finding that Gabriel Kaelin, the passenger in the Petitioner vehicle, was under the age of twenty-one. He argues that Officer Tibbett's testimony that the passenger told him his birthday was not sufficient without more "competent evidence . . . (license, etc.)." He also argues that the report that Officer Tibbett's submitted to the Secretary of State, which included the corroborating information concerning the passenger's age, was not evidence as it was not identified as true or accurate.

However, the evidence was sufficient for the Hearing Officer to find, by a preponderance of the evidence, that the passenger was under the age of twenty-one. There is no requirement that the officer had to retain a copy of the license and the report

was admitted into evidence as Exhibit 1 *without objection*, so the fact that improper foundation may not have been laid is irrelevant as any such objection was not preserved. Given the standard of review and the low threshold burden of proof, this Court finds that the Hearing Officer properly concluded that the passenger was under the age of twenty-one.

### 3. *Duty to Submit to a Blood-Alcohol Test*

29-A M.R.S.A. § 2472(4) states that if there is probable cause to believe that a person is under the age of twenty-one and has operated a vehicle with any alcohol in his/her blood, that person "must submit to a chemical test . . . ." The statute does not provide any exception that would relieve an individual of that duty.

The Petitioner argues that he was relieved of the duty to submit to the intoxilyzer test, because he believed that it was not reliable. He argues that a person should not be forced to submit to an unreliable test and then have their license suspended when they refuse. He points to only one Superior Court decision in 1987 that established a flexible rule. In Rivers v. Secretary of State, 1987 Me. Super. Ct. KENSC-CV-87-405 (Dec. 28, 1987), the Petitioner initially refused to take a test fearing, due to his medical training, that he could catch the AIDS virus. Within several moments he reconsidered, but the officers refused to give him the test. The Superior Court found that a flexible rule should be used to determine whether an individual refuses to take a test. The court put forth factors including, "the likelihood that the test would yield an accurate result." On the other hand, however, the Law Court in State v. Butler, 667 A.2d 108, 110 (Me. 1995), found that an individual who refused to take a breath test because he felt it was unreliable

8

and even offered to take a blood test instead, was deemed to have refused to submit to a test.

This Court rejects the reasoning in Rivers. Reading an exception into the statute that does not exist is not proper. The statute imposes a duty to submit to a blood-alcohol test and lists no exceptions. The plain text combined with the purpose behind that statute prohibits an individual from relieving them self of the duty to submit to a test when they feel that the test is unreliable.

The Petitioner argues that the purpose behind the statute is to ensure that accurate results are obtained. If this were true, then the Petitioner might have a valid argument, however, the true purpose behind the statute is to "promote consensual searches and seizures, 'thereby deterring the operation of motor vehicles by intoxicated persons and promote highway safety.'" State v. Cote, 1999 ME 123, ¶ 16, 736 A.2d 262, 266 (quoting State v. Chisholm, 565 A.2d 92, 93 (Me. 1989)). To grant an individual the authority to refuse to submit to a test whenever they feel that the test would yield unreliable results unreliable would undermine the purpose behind the statute. If an individual takes an unreliable test, he has the valid remedy of excluding the evidence of the results. The duty to submit to a test should not hinge on whether the Petitioner believed that test will produce an accurate result. Such is not his prerogative.

However, even if this Court were to adopt the flexible rule in River, there is substantial evidence to support the Hearing Officer's finding that the Petitioner's stated reasons for not taking the test were not "credible." The Hearing Officer pointed to evidence that on the way to the police station, long before they arrived, the Petitioner had constantly argued with Officer Tibbetts and repeated statements that he would not take a

test long before he became aware of the fact that the intoxilyzer was not working properly. The evidence showed that the Petitioner never once seemed willing to take the test and then changed his mind when the intoxilyzer was receiving a RFI. Finally, the Petitioner testified that he knew that the intoxilyzer would shut down without a reading if the RFI indicator came on. Thus, even if the Petitioner could have relieved himself of a duty to submit himself to a test based on a belief of unreliability, the Hearing Officer rejected this excuse based on the evidence. Given the deferential standard of review, this Court will not disturb the Hearing Officer's determination of credibility. Sprague Electric Co. v. Maine Unemployment Ins. Comm'n, 544 A.2d 728, 732 (Me. 1988).

4.      Constitutional Arguments

The Petitioner argues that Officer Tibbetts had no constitutional basis for his actions. He argues that "the combination of lack of information as to the results of failing to take the test, and being denied a phone call to an attorney was a violation of due process." Furthermore, the Petitioner argues that Officer Tibbetts had no lawful reason to "be where he was, to detain anyone, to demand Mr. Goodman exit the stationary vehicle, to perform field sobriety tests, and most importantly of all to handcuff him and take him to jail." The Petitioner does not offer any further arguments or case law as to how Officer Tibbetts acted illegally or that his actions deprived the Petitioner of due process of law. In fact, the Petitioner does not even argue how such violations should have influenced the Hearing Officer's determinations.

However, the Petitioner was not permitted to make such constitutional arguments at the hearing. The issues at the hearing were limited to:

10

By a preponderance of the evidence, was there sufficient probable cause to believe that Mr. Goodman had not obtained his twenty-first birthday' and on this date of October 18, '03, there was there probable cause to believe that he was operating a motor vehicle while having any amount of alcohol in his blood' and then by a preponderance of the evidence, was Mr. Goodman informed of the consequences of failing to submit to a chemical test, and was Mr. Goodman . . . or did Mr. Goodman in fact fail to submit to a test.

Record 107

The Hearing Officer was limited to those issues due to 29-A M.R.S.A. §§ 2472(5), 2521(8). While this Court can reverse or modify an agency ruling based on "violation of constitutional" provisions, 5 M.R.S.A. § 11007(4)(C), as these issues were not properly before the Hearing Officer and were not relevant to the issues that were adjudicated, this Court deems them waived.

Finally, even if this Court were to address these arguments, the fact remains that the exclusionary rule does not apply to administrative license suspensions. Powell v. Secretary of State, 614 A.2d 1303 (Me. 1992). Therefore, even if the evidence presented before the Hearing Officer was obtained illegally and in violation of the Petitioner's constitutional rights, the evidence was still properly relied upon.

## CONCLUSION

For the foregoing reasons, this Court will affirm the Respondents' decision that there was probable cause to believe that the Petitioner was not twenty-one years old, that the Petitioner was operating a motor vehicle and that the Petitioner had any amount of

11

alcohol in his blood. Further, the Respondents properly found, by a preponderance of the evidence, that the Petitioner was informed of the consequences of failing to submit to a test, was carrying a passenger under the age of twenty-one and that the Petitioner had failed to submit to a test.

Accordingly, the entry is:

Decision of the Respondents, State of Maine, and Department of the Secretary of State, is **AFFIRMED**.

The Clerk may incorporate this Decision and Order into the docket by reference.

DATED:  March 16, 2006

_____
Justice, Maine Superior Court
Andrew M. Mead

Date Filed __5/7/04__  _____PENOBSCOT_____  Docket No. __AP-2004-13__
County

Action __RULE 80C APPEAL__

**ASSIGNED TO JUSTICE ANDREW M. MEAD**

RYAN GOODMAN

VS.

STATE OF MAINE, DEPARTMENT
OF THE SECRETARY OF STATE

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| PAINE, LYNCH & HARRIS, P.A.<br>P. O. BOX 1451<br>BANGOR, ME.  04402-1451<br>BY:  MARTHA J. HARRIS, ESQ.<br>        JOHN BUNKER, ESQ.  a/o 3/9/05 | OFFICE OF THE ATTORNEY GENERAL<br>6 STATE HOUSE STATION<br>AUGUSTA, ME.  04333-0006<br>BY:  GWENDOLYN D. THOMAS, AAG<br>        DALE DENNO, AAG |

| Date of Entry | |
|---|---|
| 5/7/04 | Petition for Review filed by the Petitioner.  (attachment attached) |
| 5/11/04 | Notice of Assigned Justice filed.  Pursuant to Administrative Order, Single Justice Assignment of Civil Cases, Docket No. SJC-323, the above referenced case is specially assigned to Justice Andrew M. Mead. /s/Margaret Gardner, Clerk.  Copy forwarded to Petitioner's Attorney and to Respondent. |
| 5/12/04 | Certificate of Service of Petition for Review by Certified Mail as to Deft. State of Maine, Department of the Secretary of State filed by Plaint Domestic Return Receipt of Certified Mail s.d. 5/8/04, unsigned, attached. |
| 5/18/04 | Certificate of Service filed by Petitioner that due service of the Petition for Review was made upon the Respondent.  (Domestic Return Receipt of Certified Mail s.d. 5/8/04, unsigned, attached) |
| 5/20/04 | Letter received by Gwendolyn D. Thomas, AAG, entering her and Dale Denno's appearance on behalf of the Respondent. |
| 6/14/04 | Certified Record filed by Respondent. |
| 6/16/04 | Notice and Briefing Schedule 80C Appeal of Final Agency Actions filed. Copy forwarded to all attorneys of record. |
| 7/22/04 | Motion for Enlargement of Time filed by Petitioner. |
| 7/28/04 | Court's ruling on Petitioner's Motion for Enlargement of time filed 7/22/04; Motion Granted.  The Petitioner is granted an enlargement of time to August 23, 2004 within which to file his brief. (Mead, J.)  Copy forwarded to all attorneys of record. |
| 8/24/04 | Brief of Petitioner Ryan Goodman filed. |