STATE OF MAINE
CUMBERLAND, ss

STATE OF MAINE
Cumberland.ss.Clerk's Office

OCT 29 2012

RECEIVED

SUPERIOR COURT
CIVIL ACTION
DOCKET AP-12-030
JAW-CUM- 10/29/2012

DANIEL S. QUINLAN
            Petitioner

        v.

SECRETARY OF STATE OF MAINE

        Respondent

DECISION AND ORDER

This matter came before the court on Petitioner, Daniel Quinlan's 80C appeal. For the following reasons, this court concludes that the decision of the Secretary of State of Maine should be affirmed.

## BACKGROUND

Effective February 20, 2012, the Secretary of State administratively suspended the driver's license of Daniel Quinlan for a 275-day period pursuant to 29-A M.R.S.A. § 2521 based on a report from a Gorham Police Officer that Quinlan refused to submit to a chemical test upon the officer's demand on January 20, 2012. On February 15, 2012, the Secretary received Quinlan's timely request for an administrative hearing, which was ultimately held on May 2, 2012.

Before and at the outset of the hearing, counsel for Quinlan sought to exclude from the administrative hearing the evidence seized allegedly in violation of the Fourth Amendment to the United States Constitution and Art. 1, § 5 of the Maine Constitution[1],

---

[1] The Fourth Amendment of the United States Constitution and Article 1, §5 of the Maine Constitution offer identical protection. *State v. Patterson*, 2005 ME 26, ¶10, 868 A. 2d 188, 191. There is no independent exclusionary rule for unlawful searches and seizures under the Maine Constitution beyond the requirements of the federal constitution. *State v. Giles*, 669 A.2d 192, 194 (Me. 1996).

after the officer entered Quinlan's home. Quinlan's counsel argued that the prejudice includes the suspension of his license for 275 days and the fact that this administrative suspension would count as a first offense for any subsequent OUI offense. See 29-A M.R.S.A. §§ 2401(11), 2411(1-A). The hearing officer refused to apply the exclusionary rule on the grounds that it is outside the jurisdiction of hearing examiners.

At the conclusion of the hearing, the examiner orally found, pursuant to 29-A M.R.S.A. § 2521(8), that a preponderance of the evidence established that there was probable cause to believe that (1) Quinlan had operated a motor vehicle while under the influence of intoxicants; (2) the officer had informed Quinlan of the consequences of failing to submit to a test; and (3) Quinlan failed to submit to a test. The hearing examiner based his finding on the testimony of the officer and his report, which was not objected to by Quinlan and was admitted into evidence at the hearing. This evidence included evidence obtained after entry in Quinlan's house.

The hearing officer's findings included the following:

- The officer was dispatched to a report of a car off the road in a ditch on someone's property located at 146 Narraganset Street, Gorham;

- The engine was still warm on the car

- The car was registered to Quinlan at the address of 142 Narraganset Street, Gorham;

- The officer observed footprints in the snow out and around with a shovel near the car and leading from the car to Quinlan's house;

- The officer advised the woman who answered the door (who confirmed Quinlan was home) that he needed to speak with Quinlan about his car in a ditch;

2

- The woman reported back to the police more than once that Quinlan would not come to the door, and finally said, "you are going to have to go to him";

- While at the door, the officer could hear Quinlan in his bedroom and informed him that the officers needed to speak with him;

- The officers, believing they had her consent, entered the house and went to where Quinlan was in the house;

- The officer observed that Quinlan had red, bloodshot eyes, a strong odor of alcohol on his breath, slurred speech and was unsteady on his feet;

- Quinlan denied driving, denied knowing that his vehicle was off the road, denied that he had anything to drink at home and refused to perform any field sobriety tests;

- The officer based his conclusion that Quinlan was the operator of his vehicle on all of the foregoing circumstances, including his wet clothes in the house and his shoes which matched the footprints in the snow;

- The officer arrested Quinlan, took him to the station and read him the warnings on the implied consent form for the Intoxilyzer test.

- Quinlan stated that he wanted to speak to his attorney, he understood the Implied Consent Form but refused to take the test and sign the form.

At the administrative hearing, Quinlan contested the single issue that the preponderance of the evidence established that there was probable cause to believe that he had operated the vehicle. He also claimed that the officer's entry into his home violated the Fourth Amendment to the United States Constitution and thus, the exclusionary rule should be applied to suppress the evidence of the officer's observations after he entered Quinlan's home. The hearing officer refused to consider

3

the constitutional issue because he was not authorized by the Maine Legislature to do so. The hearing officer also denied a request for stay of the suspension. On May 10, 2012, the Petitioner filed a Petition and request for review of agency action pursuant to M.R. Civ. P. 80C.

During the course of this appeal, the Petitioner has cast the issues in varying ways.[2] He argues in his brief that (1) whether the administrative hearing on suspension of a driver's license for refusal to submit to a test constitutes a quasi-criminal proceeding to which the Fourth Amendment to the United States Constitution and Art. 1, §5 of the Maine Constitution apply; and (2) whether the imposition of an administrative suspension that has the force and effect of a prior offense violates his due process rights under the Fourth and Fifth Amendments of the United States Constitution and Art. 1, §6-A of the Maine Constitution. Petitioner's Brief at 1-2. Quinlan states that this appeal does not require the court to address findings of fact made by the Secretary of State because he is not asserting a sufficiency of the evidence claim with the exception that if the evidence were excluded from the Fourth Amendment violation, there is insufficient evidence to uphold the Secretary of State's decision. Pet's Brief at 3.

The State in its rebuttal relies on *Powell v. Secretary of State*, 614 A. 2d 1303 (Me. 1992), for the well-established principle that the exclusionary rule does not apply to administrative license suspensions. To distinguish his case from *Powell*, Mr. Quinlan

---

[2] The issues raised in the petition differed from those raised in his brief. The petition raised three issues: (1) Whether the State may rely on evidence obtained in violation of the Fourth Amendment to prove there was probable cause to believe Quinlan was operating a motor vehicle while under the influence of intoxicants; (2) whether the State must prove by a preponderance of the evidence that Quinlan was operating the motor vehicle, or whether the State must only prove by a preponderance of the evidence that there was probable cause to believe that Quinlan was operating a motor vehicle while under the influence of intoxicants; and (3) Whether Quinlan was denied due process of law by the issues for the hearing and the hearing officer's refusal to address the Fourth Amendment violations raised by Quinlan. Petitioner's Petition, ¶ 14.

4

cites to language in *State v. Cote*, 1999 ME 123, ¶ 16, 736 A. 2d 262, 266, to show the coercive intent of 275-day suspension for refusal of a chemical test as compared to the remedial purpose of a 90-day suspension for actually operating a motor vehicle while intoxicated.

## STANDARD OF REVIEW

The Court's review of Agency rulings is very limited and the Agency's rulings may be reversed or modified on appeal only if the Court determines that they are 1) in violation of constitutional or statutory provisions; 2) in excess of the statutory authority of the agency; 3) made upon unlawful procedure; 4) affected by bias or error of law; 5) unsupported by substantial evidence on the whole record; or 6) arbitrary or capricious or characterized by abuse of discretion. 5 M.R.S.A. § 11007(4).

## DISCUSSION

Because Quinlan did not raise the due process argument before the administrative agency, he has not preserved that issue for appellate review. *Powell v. Secretary of State*, 614 A. 2d 1303, 1307 (Me 1992). Accordingly, the only issue preserved for appeal is whether the Fourth Amendment's exclusionary rule applies to administrative refusal hearings pursuant to 29-A M.R.S. §2521(8).

1. Exclusionary Rule and Administrative License Suspension Proceedings

In *Powell v. Secretary of State*, 614 A.2d 1303, the Law Court expressly held that the exclusionary rule does not apply to an administrative license suspension proceeding. *Id*. 614 A. 2d at 1306. *Powell* involved an administrative license suspension proceeding under 29 M.R.S.A. §§ 1311-A(2), (3) (repealed P.L. 1993 ch. 683, §A1) which allowed for a suspension hearing after the petitioner's driver's license had been suspended based on the results of a blood alcohol test. Powell was also tried criminally and the evidence obtained as a result of the illegal traffic stop was suppressed according to the

5

exclusionary rule. The hearing officer refused to apply the exclusionary rule to the administrative suspension hearing because his only statutory task was to determine if there was probable cause to believe that Powell was operating under the influence.

The Law Court held that the purpose of the exclusionary rule is to deter unlawful police conduct and its use must be restricted to those applications where it would be most efficacious. *Powell*, 614 A. 2d at 1306. The Law Court observed that in all of its history, the exclusionary rule has never been applied to exclude evidence from a civil proceeding. *Id.* (citations and quotations omitted). The *Powell* Court cited the balancing test articulated in *Immigration & Naturalization Serv. V. Lopez-Mendoza*, 468 U.S. 1032, 1041-42, 82 L.Ed. 2d 778, 104 S. Ct. 3479 (1984) and *U.S. v. Janis*, 428 U.S. 433, 447, 49 L. Ed. 2nd 1046, 96 S. Ct. 3021 (1976), and weighed the likely social benefit of excluding the unlawful evidence and the likely costs and benefits of using the evidence in a civil proceeding. The Law Court held that the costs to society would be substantial because the purpose of the administrative suspension is to protect the public by removing unsafe drivers from the streets and because applying the exclusionary rule would impose an undue burden on the hearings themselves. *Id.* The Law Court also concluded that "a license suspension hearing is not a quasi-criminal proceeding, but rather a 'reasonable regulatory measure to protect public safety.'" *Powell*, 614 A. 2d at 1307 (quoting *State v. Anton*, 463 A. 2d 703, 707 (Me. 1983)).

Because the State has decided to not charge Quinlan, he will not have the opportunity that Powell did to challenge the evidence in a criminal proceeding. However, not pursuing the criminal case may have as much of a deterrent effect as what existed in *Powell*. Thus, there was little additional deterrent effect to be gained by excluding the evidence at Quinlan's administrative hearing. *Powell*, 614 at 1307. The burden of applying the exclusionary rule in the case at hand would impose on the

6

administrative hearing the same undue burden described in *Powell*.

A 2005 Maine Superior Court, in a case that is on all fours with the facts of this case, applied the holding in *Powell* to an administrative suspension hearing for failure to submit to a test, stating that the exclusionary rule does not apply in administrative license suspensions. *Goodmann v. State*, 2005 Me. Super. LEXIS 59,*16 (Mar. 17, 2005). In the intervening two decades since the *Powell* decision was rendered, the Maine Legislature has not seen fit to amend those provisions to clarify that the exclusionary rule must be applied in administrative suspension hearings. See *Doucette v. Hallsmith/Sysco Food Services, Inc.*, 2011 ME 68, ¶ 26, 21 A. 3d 99, 108 (The Legislature is presumed to have knowledge of Law Court decisions, and in the absence of evidence that it intended to modify those decisions, the court will not interpret a rule or statute to effect such a modification.)

A majority of jurisdictions follow the rule articulated in *Powell*. See e.g., *Miller v. Toler*, 2012 W.Va. LEXIS 293*24-27(W.Va. 2012)(and cases cited therein). The Vermont Supreme Court has explicitly held otherwise. In *Vermont v. Lussier*, 757 A. 2d 1017(Vt. 2000), the court held that the exclusionary rule applies in a civil license suspension proceeding. *Id.* at 1026-27. A critical distinction between Vermont and Maine is that the civil license suspension proceeding in Vermont occurs in the district court, not in front of an administrative officer. Quinlan has cited no case law here or outside of Maine in which the exclusionary rule was applied in an administrative license suspension hearing.

Quinlan tries to distinguish his refusal case from *Powell* because (1) the policy behind the implied consent statute (as reflected by the length of the suspension) is different, (2) there is a lower burden of proof and different issues addressed in an administrative hearing for failure to submit to a test, (3) the statutory change making a

7

failure to submit a prior offense for sentencing purposes heightens the consequences, and (4) the statute has a punitive effect. He argues that for these reasons, the administrative hearing on a license suspension for failure to submit to a test is quasi-criminal in nature, making the exclusionary rule applicable.

Quinlan selectively reads *State v. Cote*, 1999 ME 123, ¶ 16, 736 A. 2d 262, 266, to bolster his first argument that the purpose of the refusal statue is coercive. Contrary to Quinlan's argument, the purpose behind the implied consent statue is to "promote consensual searches and seizures, 'thereby deterring the operation of motor vehicles by intoxicated persons and promote highway safety.'" *State v. Cote*, 1999 ME 123, ¶ 16, 736 A. 2d 262, 266 (quoting *State v. Chisholm*, 565 A. 2d 92, 93 (Me. 1989). I read the statute as having a twofold purpose, to encourage consensual searches and to protect public safety.

Quinlan's second argument is simply incorrect. The standard of evidentiary proof in any license suspension hearing is by a preponderance of the evidence. See 29-A M.R.S.A. §§ 2521(8), 2484(3).

The Law Court rejected Quinlan's punitive effect argument in *State v. Savard*, 659 A. 2d 1265 (Me. 1995). The Law Court determined that a criminal prosecution for OUI, following an administrative hearing affirming the suspension of driver's license for OUI, is not barred by the constitutional prohibitions against double jeopardy. The Law Court focused on whether the license suspension constitutes punishment and concluded that "[r]evocation of the license is nonpunitive in character." 659 A. 2d at 1268. The Court reasoned that when a license is issued, the vehicle operator agrees to abide by certain conditions and rules of the road, and acknowledges that the continued use of the license to drive is dependent on compliance with the laws relating to vehicle operation. *Id*. According to the Court,

8

> A licensee has no absolute right in a motor vehicle operator's license. A licensee's right to use the license is specifically conditioned on observing specified operating standards. The suspension of that privilege merely signifies the failure of the holder to comply with the agreed conditions.

*Id.* The Law Court confirmed that revocation of a driver's license is remedial rather than punitive in nature. *Id.* The Court concluded that an administrative license suspension is not a criminal proceeding or quasi-criminal proceeding as claimed by the petitioner in *Savard* and, therefore, his claim that he was entitled to a hearing on his motion to suppress and other constitutional protections during the administrative hearing afforded criminal defendants is without merit.

Given the enduring validity of *Powell*, the continuing public policy of removing unsafe drivers from the street and the remedial effect of the implied consent statute, the hearing officer properly refused to apply the exclusionary rule in the license suspension hearing. The fact that the search could not be challenged in this proceeding may be a grounds for challenging whether this should be a predicate first offense if there is a subsequent OUI charge, but that is not an issue for this proceeding.[3]

## 2. Probable Cause on the Question of Operation of the Motor Vehicle

The hearing officer only had to determine, by a preponderance of the evidence whether there was probable cause to believe that the petitioner had operated the motor vehicle while under the influence of intoxicants. 29-A M.R.S.A. § 2508(8-A). The petitioner did not dispute at the administrative hearing or in this appeal that the there was probable cause to believe that he had alcohol in his blood and he was informed of the consequences for failing to submit to a test.

The hearing officer found the petitioner's arguments to be unpersuasive that he was not operating his vehicle. The hearing officer considered all of the evidence,

---

[3] The issue of whether the officer had consent to enter Quinlan's home remains an unresolved issue in this case and is left to another day.

9

including the evidence obtained after the entry into Quinlan's home. An examination of the record supports the hearing officer's conclusion. The police officer observed a vehicle registered to the petitioner in a ditch on a neighbor's property with the engine still warm and footprints to the petitioner's house across the street. The officer matched the footprints in the snow to petitioner's shoes thus undermining the defendant's contentions that he did not know that his vehicle was in ditch. The officer also observed footprints in and around the vehicle with a shovel and wet clothes at defendant's home further undermining petitioner's claim that he had not been outside. There was more than enough evidence for the Hearing Officer to find by a preponderance of the evidence that there was probable cause to believe that Quinlan was operating his vehicle that evening. Given the deferential standard of review, the Court will not disturb the hearing officer's determination of credibility.

The fact that the hearing officer considered evidence obtained after the entry into Quinlan's home is entirely consistent with well-established law that the exclusionary rule does not apply to administrative license suspensions. Even if the evidence were seized illegally,[4] the hearing officer properly relied upon *all* of the evidence introduced at the hearing.

## DECISION

The Department's decision is hereby AFFIRMED.

The clerk shall incorporate this Decision and Order in the docket by reference pursuant to M.R. Civ. P. 79(a).

DATED: October 26, 2012

Joyce A. Wheeler, Justice

---

[4] The legality of the search may be left for another day if Quinlan is charged with a subsequent OUI offense alleging this suspension is his first offense.

10

Petitioner-Thomas Marjerison Esq

Respondent-Donald Macomber AAG