MAINE SUPREME JUDICIAL COURT                Reporter of Decisions
Decision:    2026 ME 16
Docket:      Pen-24-401
Argued:      October 9, 2025
Decided:     February 24, 2026

Panel:       STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, DOUGLAS, and LIPEZ, JJ.

STATE OF MAINE

v.

AUSTIN W. DAVIS

CONNORS, J.

[¶1]  Austin W. Davis entered a conditional guilty plea to a charge of operating under the influence after the trial court (Penobscot County, *Ociepka, J.*) denied his motion to suppress the results of a breath test.  Davis brought this appeal challenging the denial of his motion to suppress the breath test result on the grounds that the administration of the breath test violated his rights under the Fourth and Fourteenth Amendments.  We affirm.

## I.  BACKGROUND

[¶2]  On May 26, 2023, a law enforcement officer with the Orono Police Department arrested Davis for operating under the influence (OUI), 29-A M.R.S. § 2411(1-A)(A) (2025).  Davis concedes that probable cause existed to arrest him.

2

## A. The Circumstances Surrounding the Breath Test

[¶3]  The officer brought Davis into an Intoxilyzer room at the police station, where a fifteen-minute observation period began before the officer conducted the breath test.  During this time period, the officer and Davis engaged in conversation.  Davis told the officer that he had worked a sixty-hour week and wanted to get back home to sleep.  The officer told Davis that, after doing the breath test, the "worst that you'll get is a piece of paper from me," and that the officer had no intent of "bringing you to the jail tonight."  Davis stated that he did not consent to a breath test because it was "against what I believe in."  The officer informed Davis that before he marked him as a refusal, he wanted to make sure Davis understood the consequences.  The officer read Davis's statutory rights under the provision of the Maine Revised Statutes on implied consent to chemical tests, which provides for administrative penalties and a mandatory minimum sentence if a person who refuses to comply with chemical testing is convicted of an OUI.  *See* 29-A M.R.S. § 2521 (2025); *see also* 29-A M.R.S. § 2411(5) (2025) (establishing mandatory minimums).  The officer asked Davis if he understood the implied consent warning, and Davis ultimately responded, "Yeah."

[¶4]  The officer then stated that if Davis refused a breath test, he would go to jail.  He told Davis that Davis had three choices: if he took the test and blew less than .08, he would go home; if he took the test and blew .08 or more, he would get a summons; if he chose not to take the test, he would go to jail.  Davis said that he did not "want any more debt," and the officer stated that "you not doing a test just makes things worse."

[¶5]  After further discussion, the officer clarified that Davis would not be charged with anything else for refusing the test.  The officer said, "I think you should blow, but . . . I'm not going to force you to do anything."  Davis responded, "I'll blow into the instrument, I guess," and performed the breath test.

## B.    Procedure

[¶6]  The State charged Davis with criminal OUI.  Davis filed a motion to suppress the results of the breath test, arguing that his consent to the test was involuntary.  On May 30, 2024, the trial court denied the motion, concluding that consent to the test was immaterial under *Birchfield v. North Dakota*, 579 U.S. 438 (2016), which held that the Fourth Amendment permits warrantless breath tests as searches incident to arrest.  Davis then entered a conditional guilty plea, preserving the right to appeal from the order denying his motion to suppress.  The court (*Murray, J.*) entered a judgment on the plea, including a

4

stayed sentence, and Davis timely appealed from the judgment. *See* M.R. App. P. 2B(b)(1).

## II. DISCUSSION

[¶7] Davis argues that admitting the breath test result was impermissible because he submitted to the breath test in response to coercive actions by the officer, rendering the test inadmissible under the Fourth Amendment and the Due Process Clause of the United States Constitution.[1]

## A. No consent was needed under the Fourth Amendment.

[¶8] As the court noted, in *Birchfield*, the Supreme Court held that, although a search warrant or the defendant's consent is, in many cases, constitutionally required to test a defendant's *blood* for intoxicating substances, "the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving." *Birchfield*, 579 U.S. at 474. The Supreme Court explained that breath tests do not "implicate[] significant privacy concerns." *Skinner v. Ry. Lab. Execs.' Ass'n*, 489 U.S. 602, 626 (1989); *see also Birchfield*, 579 U.S. at 461. This is because "[b]lood tests are significantly more intrusive" than breath tests,

---

[1] Davis also asserts on appeal that the trial court erred by not suppressing Davis's breath test result under article I, sections 5, 6, and 6-A of the Maine Constitution, but he did not develop these arguments before the trial court, so these arguments are waived and we do not consider them. *See State v. Carter*, 2025 ME 77, ¶ 22 n.6, 345 A.3d 38.

and "[t]he impact of breath tests on privacy is slight, [while] the need for [blood alcohol content] testing is great." *Birchfield*, 579 U.S. at 474.

[¶9]  Thus, Davis's argument fails under the Fourth Amendment because his consent was immaterial to the admissibility of the test.

**B.    The search was not otherwise unreasonable under the Fourth Amendment.**

[¶10]  The Supreme Court has ruled that "[a] state plainly has the right to offer incentives for taking a test that provides the most reliable form of evidence of intoxication for use in subsequent proceedings."  *Mackey v. Montrym,* 443 U.S. 1, 19 (1979).  Choosing to release the arrestee instead of detaining him is one such incentive.  *People v. Bracken*, 494 N.Y.S.2d 1021, 1023 (Crim. Ct. 1985).  This conclusion is reinforced by the lack of any false statement by the officer and that the officer's choice to apply this tactic was not arbitrary as unrelated to a legitimate state purpose in that, as noted in *Mackey*, the results of a breath test provide additional, reliable evidence relevant to the arrest. *Cf. State v. LeMeunier-Fitzgerald*, 2018 ME 85, ¶ 32, 188 A.3d 183 (upholding a denial of a motion to suppress evidence resulting from a blood draw because the warnings for refusal to submit to testing involved no "deceit, misrepresentation, or trickery").

6

**C.**     **We analyze Davis's argument under the Fourth Amendment, not the Due Process Clause, because the Fourth Amendment is the explicit textual source of federal constitutional protection from the allegedly unreasonable search.**

[¶11]  In *Graham v. Connor*, 490 U.S. 386 (1989), a North Carolina police officer became suspicious after observing Graham hurriedly enter and leave a convenience store.  *Id.* at 389.  The officer followed the car in which Graham was riding, ultimately making an investigative stop.  *Id.*  Graham, who was diabetic and was suffering from an insulin reaction, "got out of the car, ran around it twice, and finally sat down on the curb, where he passed out briefly." *Id.*  Backup police officers arrived on the scene, and one of the officers "rolled Graham over on the sidewalk and cuffed his hands tightly behind his back, ignoring [a friend's] pleas to get him some sugar. . . .  Several officers then lifted Graham up from behind, carried him over to [his friend's] car," and "shoved his face down against the hood of the car." *Id.*  Graham brought suit under 42 U.S.C. § 1983 against the individual officers involved in the incident.  *Graham*, 490 U.S. at 390.  The matter ultimately came before the Supreme Court, which held that where a claim "arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Id.* at 394.  The

Court explained that "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Id.* at 395.

[¶12]　Because the Fourth Amendment explicitly protects against unreasonable searches, Davis's claims here are, under *Graham*, properly analyzed under the Fourth Amendment, not substantive due process under the Fourteenth Amendment.[2] Because the search was reasonable under the Fourth Amendment, Davis's challenge fails.[3]

---

[2] Although *Graham* was decided in a civil context in which a plaintiff argued the search violated his civil rights under 42 U.S.C. § 1983, the same reasoning—that the claim that the search violated the U.S. Constitution is analyzed under the Fourth Amendment, not the Due Process Clause—applies to motions to suppress. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 n.9 (1998); *see also United States v. King*, 222 F.3d 1280, 1283-84 (10th Cir. 2000); *United States v. Coke*, No. 07 CR 971 RPP, 2011 WL 3738969, at *4 (S.D.N.Y. Aug. 22, 2011); *United States v. Miceli*, 774 F. Supp. 760, 771 (W.D.N.Y. 1991).

Davis notes that in *State v. Stade*, 683 A.2d 164 (Me. 1996), we relied on the Due Process Clause when we affirmed the grant of a motion to suppress the results of a blood draw due to statements made by an officer to obtain consent for the draw. Setting aside the fact that, unlike here, consent was required in *Stade* to obtain the draw, in *Stade*, 683 A.2d at 166 n.4, we cited *Mackey*, a pre-*Graham* decision in which the Supreme Court applied a due process analysis when reviewing incentives to take a breath test. *Mackey*, 443 U.S. at 13-14. After *Mackey* and *Stade* were decided, the Supreme Court indicated in *Lewis* that *Graham* applies beyond civil claims to motions to suppress. Hence, we review Davis's claim only under the Fourth Amendment.

[3] We note that *Birchfield* allows for warrantless breath tests without consent because of the minimally intrusive nature of the search, and that here, the officer expressly noted that he would not force Davis to take the test. A threat by an officer to physically force a suspect to take a breath test could well violate the Fourth Amendment. *See State v. Perkins*, 415 P.3d 460, 471 (Kan. Ct. App. 2018), *aff'd*, 449 P.3d 756 (Kan. 2019) (Atcheson, J., concurring) ("[T]he actual use of physical force to compel an arrestee to provide a breath sample presumably would cross the line of unreasonableness

8

The entry is:

Judgment affirmed.

---

Christopher Northrop, Esq., Linsey Ruhl, Esq., Addison Boisvert, Stud. Atty., Emily Nyman, Stud. Atty., and Marissa Oves, Student Attorney (orally), University of Maine School of Law Rural Practice Clinic, Fort Kent, for appellant Austin W. Davis

R. Christopher Almy, District Attorney, and Kaitlin L. Cook, Asst. Dist. Atty. (orally), Prosecutorial District V, Bangor, for appellee State of Maine

Penobscot County Unified Criminal Docket docket number CR-2023-1574
FOR CLERK REFERENCE ONLY

---

set in the Fourth Amendment."). Additionally, as noted supra n.1, because Davis did not develop his argument under the Maine Constitution at the trial court, we express no opinion as to whether the persuasive tactics applied by the officer here would render the search unreasonable under article 1, section 5, or violate the multiple due process provisions in the Maine Constitution.